**930**

Anna Ruth CROWDER,
Plaintiff-Appellant,

v.

KLOPMAN MILLS, A DIVISION OF
BURLINGTON INDUSTRIES, INC.,
and Liberty Mutual Insurance Company,
Defendants-Appellees.

Supreme Court of Tennessee.

Feb. 16, 1982.

Max E. Wilson, Mountain City, for plaintiff-appellant.

Thomas R. Grayson, Mountain City, for defendants-appellees.

## OPINION

HARBISON, Chief Justice.

This worker's compensation claim was dismissed as being barred by the statute of limitations, T.C.A. § 50–1003. The employee insists that the employer voluntarily furnished medical services so as to waive or toll the statute of limitations. Undisputed evidence in the record, seemingly not called to the attention of the trial judge, supports that contention. Accordingly the judgment of the trial court is reversed and the cause is remanded for a new trial.

Appellee was employed at a textile mill operated by her employer in Mountain City, Tennessee. Her duties involved strenuous use of her hands and arms. She developed a ganglion cyst in the area of her right wrist as a result of these activities. She was seen by a physician on several occasions in September and early October 1978 for this condition. She was hospitalized, and on October 16, 1978, the cyst was removed by surgery.

Appellant was off from her work for only four days, so that she did not qualify for temporary, total disability benefits under the Worker's Compensation Act, T.C.A.

§ 50–1005. When she returned to work, however, she was placed on light duty and was told by her employer that she would be notified when she was able to return to her original job. This never occurred. Appellant continued to have complaints of pain and discomfort in the wrist and in the area where surgery was performed for the remainder of her employment with Klopman Mills, which terminated on February 4, 1980.

The worker's compensation insurance carrier for the employer paid the medical and hospital expenses in connection with appellant's surgery. Its last voluntary payment to the surgeon, according to affidavits in the record, occurred in December 1978. Thereafter, insofar as the record discloses, neither the employer nor the insurance carrier has made any expenditures on behalf of the employee.

On five occasions after the date of the surgery, once in 1978, three times in 1979 and finally on February 11, 1980, the employee reported to a registered nurse maintained at the plant by the employer. She had also been seen by the nurse on six occasions prior to the date of the surgery. The nurse did not testify, however, nor were her records filed in evidence. The testimony of the employee does not coincide with the dates stipulated as to when services were rendered by the nurse. Apparently the employer maintained a first-aid station. The employee testified that shortly after the surgery the nurse on several occasions dressed the surgical wound, and thereafter from time to time furnished the employee with "an elastic band around my wrist." The visits to the nurse continued until a few days before suit was brought in this case, February 29, 1980, the last visit occurring a week after appellant ceased work at the plant.

■ It is the insistence of the employee that the supplying of nursing services in and of itself constituted a sufficient voluntary furnishing of medical care to toll the statute of limitations within the purview of T.C.A. § 50–1003. The record, however, is so meager and the testimony so vague and general that we are unable to sustain this contention. We cannot, for example, ascertain whether the nursing care was prescribed by an attending physician as required by T.C.A. § 50–1004 ("such nursing services as ordered by the attending physician").

The employer and its insurer, of course, insist that more than one year had elapsed between the last voluntary payment of medical expenses in December 1978 and the commencement of the suit on February 29, 1980. They therefore insist that the action is barred under T.C.A. § 50–1003.

This, however, overlooks several facts which are undisputed in the record. The record itself is quite sketchy and brief, and the case was tried in a rather unusual manner. Dr. Obregon, the physician who performed the surgery, did not testify. It was stipulated that he would testify that appellant retained fifteen percent permanent partial disability to her right hand as a result of her admittedly compensable injury. It was further stated that, if called, he would testify that her condition would have prevented her from working at her normal duties at the plant since she was terminated on February 4, 1980.

It does not appear why the attending physician was not called as a witness or at least a report obtained from him, nor does it appear when he last saw appellant. She testified that she went to his office "on a number of occasions" after the surgery, but the record is quite unclear as to whether she was furnished any medical services by him after the date of the last payment by the insurance carrier in December 1978 or as to when he billed therefor. Appellant further testified that she had required the services of a physical therapist on several occasions since her termination in February 1980, and she stated that she had brought the bills for this therapy to her attorney. The therapist did not testify, however, nor

were any of the bills for such therapy introduced in evidence.

■ Nevertheless, it clearly appears from the record that in September 1980—nearly seven months after suit was filed—counsel for the appellees referred appellant to a physician, Dr. Donald R. Walters, for evaluation. Dr. Walters testified by deposition, which was filed as evidence on behalf of appellees.

Of course, it is well settled that the action of an employer in merely referring an employee to a physician for examination and evaluation does not constitute the voluntary furnishing of medical services within the purview of T.C.A. § 50–1003 so as to toll or waive the statute of limitations. *See Union Carbide Corp., Food Products Division v. Cannon,* 523 S.W.2d 360 (Tenn.1975); *Webb v. Rossville Home and Auto Supply Co.,* 483 S.W.2d 579 (Tenn.1972).

More than this occurred in the present case, however. Appellant testified on direct examination:

"Q. I believe Klopman Mills or their insurance carrier referred you to Dr. Kaydite [sic] who's an orthopedic specialist in Boone, North Carolina, and his report is filed as a part of the record here. And I believe he prescribed some medication for you, too, did he not?

A. Yes. Yes."

Dr. Walters testified that he did refer appellant to Dr. J. Marc Kadyk, an orthopedic surgeon in Boone, North Carolina, and a copy of his report to Dr. Walters is exhibited to the deposition of the latter. This report was dated September 23, 1980. It states that appellant was examined by Dr. Kadyk on that date. Dr. Kadyk reported that appellant had been given three shots of cortisone by Dr. Obregon, the operating surgeon. The indication from this report is that those treatments were given after the

surgery, but the dates do not appear. Dr. Kadyk not only examined appellant but prescribed medication for her. His report concludes:

"She is started on Clinoril and advised to take this for three weeks and will be seen back at that time for re-evaluation. Thank you for the opportunity to evaluate this patient."

Without further explanation on the part of the employer or its insurance carrier, this report clearly shows that the insurance carrier or the employer did indeed voluntarily furnish medical care and treatment for this patient some seven months after the suit was brought.

In our opinion, this amounted to a waiver of any previously lapsed statute of limitations. The situation is quite different from that in *Union Carbide Corp., Foods Products Division v. Cannon,* 523 S.W.2d 360 (Tenn.1975), in which it was held that the mere payment of a medical bill for services previously rendered would not revive an already barred cause of action. Further, at the time the *Union Carbide Corp.* case arose, the employer was only required to furnish medical care to an injured employee for a period of one year. In 1973 the statute, T.C.A. § 50–1004, was amended to require the employer or its insurance carrier to furnish necessary medical care, treatment and supplies for a period of three years,[1] and in 1977 this responsibility was made to extend indefinitely.[2]

The record indicates that one of appellant's supervisors had advised her that the company would pay her medical expenses for a period of three years from the date of her surgery, and she explained that this was one reason why she had not filed suit. The care and medication furnished by Dr. Kadyk occurred in September 1980, less than two years from the date of the surgery and at a time when the employer and its insurance carrier were claiming in their

1. Tenn.Pub. Acts 1973, ch. 379.

2. Tenn.Pub. Acts 1977, ch. 417.

pleadings that the action was barred by a one-year statute. The services were furnished for an injury which is conceded to be compensable.

■ Under these circumstances and upon this record we are of the opinion that the one-year statute of limitations is not available to the employer or to the insurance carrier as a defense. The matter has not been well developed either in the trial record or in the appellate briefs, but the insurer or the employer cannot stand silent in the face of the evidence described above, offer no explanation and simply rely upon the last date of actual payment as a defense. The voluntary furnishing of medical services, whether paid for or not, is sufficient to toll or waive the statute of limitations. *Norton Co. v. Coffin*, 553 S.W.2d 751 (Tenn.1977).

■ The insistence of appellees that appellant was required to plead "waiver" as "an affirmative defense" is without merit. Under the Rules of Civil Procedure a plaintiff is not required to respond to defenses raised in an answer, such as the statute of limitations, unless ordered by the court. See Rule 7.01.

The judgment of the trial court is reversed and the cause is remanded for a new trial, at the cost of appellees.

FONES, COOPER, BROCK and DROWOTA, JJ., concur.

The judgment of the trial court is reversed and the cause is remanded for a new trial, at the cost of appellees.