IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 4, 2008 Session

## LON CLOYD v. HARTCO FLOORING COMPANY

**Direct Appeal from the Chancery Court for Scott County**
**No. 9560      Billy Joe White,  Chancellor**

_____

**No. E2007-02041-SC-R3-WC - Filed December 30, 2008**

_____

In this workers' compensation appeal, we initially made a referral to the Special Workers' Compensation Appeals Panel for a hearing and a report of findings of fact and conclusions of law in accordance with Tennessee Code Annotated section 50-6-225(e)(3).  We then granted direct review.  The employee filed suit for workers' compensation benefits, claiming that he suffered a work-related injury to his wrist, which caused an aggravation of the underlying dormant arthritic condition in his right wrist.  In response, the employer asserted that the employee's arthritis was not causally related to his employment and argued that the severity of the pre-existing condition was not advanced by his work activities.  The trial court awarded benefits, concluding that the employee had sustained a 36% permanent partial impairment to his right extremity and was entitled to future medical treatment and discretionary costs.  The employer has appealed, contending that the trial court erred by finding that the employee had sustained an injury that was causally related to his work activities and by ruling that the statute of limitations had not expired.  Because the evidence does not preponderate against the judgment of the trial court, we affirm.

**Tenn. Code Ann. § 50-6-225(e) (2008) Appeal as of Right; Judgment of the Circuit Court Affirmed**

GARY R. WADE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., and WILLIAM M. BARKER and CORNELIA A. CLARK, JJ., joined.  WILLIAM C. KOCH, JR., J., filed a concurring opinion.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the appellant, Hartco Flooring Company.

C. Patrick Sexton, Oneida, Tennessee, for the appellee, Lon Cloyd.

**OPINION**

**I. Facts and Procedural History**

Lon Cloyd ("Employee"), fifty-five years of age at the time of trial, has a tenth-grade education.  His work history was primarily as a foundry worker but also included janitorial service.  During the term of his employment for Hartco Flooring Company ("Employer"), a manufacturer of

hardwood flooring, he drove a forklift and operated a saw and "strapper." By October 28, 2004, however, he had been a "nester" at the Oneida plant for two or three years, grading and stacking sections of lumber ranging from one to seven feet long and moving the loaded buggy to its destination between five and ten times per day. The Employee explained that his job required that he do it "right and . . . fast." He testified that on that date, he was stacking wood when his right wrist "just went out on [him]." He described his wrist as having "knotted up." The Employee immediately notified his supervisor, Wendell Cross, of the injury but continued to work that day and for several days thereafter, using only his left hand in the performance of his duties.

On November 1, the Employee was referred by the Employer to Dr. Tim Smith, who ordered x-rays, prescribed a wrist splint, and sent the Employee to physical therapy. The Employee then returned to work, but used only his left hand. Dr. Smith, who treated the Employee on four or five different occasions, did not testify at trial or by deposition.

By referral from Dr. Smith, the Employee was subsequently examined by Dr. John Harrison, an orthopedic surgeon. Dr. Harrison, who testified by deposition, examined the Employee on January 13, 2005, and diagnosed osteoarthritis at the radioschaphoid joint of the right wrist.[1] Although the Employee was placed on light duty and prescribed anti-inflammatory medications, his symptoms did not improve. In the following month, Dr. Harrison administered a steroid injection, which provided no relief. The Employee saw Dr. Harrison on a third and last occasion on March 10, 2005, at which time his symptoms were essentially unchanged. Dr. Harrison described the Employee's condition as an "aging phenomena," a malady that could have been exacerbated by his job duties "in the way of bringing on symptomology." His medical notes indicated that Employee denied any specific incident. Dr. Harrison acknowledged, however, that an event such as a fall could accelerate arthritis. Dr. Harrison, who described the Employee as "truthful," had no opinion as to whether the work had "worsened the anatomical or the actual pathology of the wrist joint." Dr. Harrison found "mild swelling" and "motion deficit" in the wrist and prescribed light duty. Dorsiflexion, with sixty degrees as normal, was only fifteen to twenty degrees. Volar flexion and ulnar deviation indicated loss of 25% and 33% respectively. It was Dr. Harrison's belief that surgery would eventually become necessary.

On February 7, 2006, Dr. William Kennedy conducted an independent medical examination of the Employee. Dr. Kennedy, who also testified by deposition, compiled a medical history, determining that the first onset of pain was on October 28, 2004, and reviewed all of the medical records pertaining to the Employee's treatment, including the radiology and therapy reports by each of the treating physicians. He also considered the x-rays which were made of the Employee's wrist on November 9, 2004, and January 13, 2005. Ultimately, Dr. Kennedy diagnosed the Employee's condition as "[s]capholunate dissociation with radiolunate osteoarthritis of the right wrist," and concluded that the October 28, 2004 incident at the Employee's workplace "aggravated and advanced the pre-existing separation of the schapholunate bone and the osteoarthritis and aroused

---

[1] This joint is located below the thumb, at the base of the radius, which is the larger of the two long bones in the forearm.

it from a dormant condition[,] not causing any symptoms[,] into a continuously painful and disabling condition." While conceding that arthritis was degenerative with an unknown etiology, he testified that trauma can speed the progression of arthritis. It was his opinion that "it was an intensive form of cumulative trauma, namely, the trauma within one day of the work of October 28, 2004, that tipped the scale" as to Employee's condition, or "was the straw that broke the camel's back." Dr. Kennedy assigned a permanent impairment of 24% to the right upper extremity as a result of the problem and suggested a permanent twenty-pound lifting limit and other work restrictions.

There was no direct evidence that the Employer or its insurer had paid for any of the Employee's medical treatment. The Employee testified that neither Dr. Smith nor Dr. Harrison billed him for their medical services. He maintained that he stopped seeing Dr. Harrison at the direction of his Employer. General Manager Frederick Gilbert, who transferred to the Oneida location some twenty-one months after the report of the injury and sixteen months after the Employee last saw Dr. Harrison, reviewed the file and found that the Employee had been provided medical treatment by Dr. Harrison. Gilbert found no indication in the file as to whether the Employer or its insurance carrier had paid any of the Employee's medical expenses, but stated that he would not know whether the Employer had paid the Employee's bills because the insurance carrier generally takes care of that.

The trial judge found that the Employee had sustained a compensable aggravation of his pre-existing arthritis and that his claim was not barred by the statute of limitations, and awarded permanent partial disability benefits of 36%. In his findings of fact, he concluded that the cumulative trauma of the Employee's work on October 28, 2004 "precipitated the pain, permanent aggravation, and advancement." Because Dr. Harrison had treated the Employee at the direction of the Employer within one year of the claim, the trial court ruled that the statute of limitations was tolled to the date of the last authorized medical treatment and did not bar the action.

## II. Standard of Review

The standard of review of issues of fact is de novo upon the record of the trial court, accompanied by a presumption of correctness of the findings, unless the preponderance of evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (2008). In such cases, the reviewing court must conduct an in-depth examination of the trial court's factual findings and conclusions. Wilhelm v. Krogers, 235 S.W.3d 122, 126 (Tenn. 2007). When the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony, considerable deference must be afforded any credibility or factual determinations. Tryon v. Saturn Corp., 254 S.W.3d 321, 327 (Tenn. 2008). A reviewing court may, however, draw its own conclusions about the weight and credibility to be given to expert medical testimony that is presented by deposition. Crew v. First Source Furniture Group, 259 S.W.3d 656, 665 (Tenn. 2008). A trial court's conclusions of law are reviewed de novo upon the record with no presumption of correctness. Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003); Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).

## III. Analysis
### A. Causation

The Employer contends that the trial court erred by finding that the Employee sustained a compensable injury, because the Employee failed to prove that the condition in his right wrist was causally related to his work activities or that the underlying osteoarthritis disease process was permanently advanced or aggravated by his work. The Employer specifically contends that the Employee's activities unrelated to work, such as carpentry work or throwing horseshoes, could not have been excluded as potential sources of his condition. The Employer also argues that there was an absence of any specific injury and that Dr. Harrison's testimony precluded compensability because arthritis qualifies as an aging phenomena of unknown causation.

An injury must both "arise out of" and occur "in the course of" employment in order to qualify as a compensable workers' compensation claim:

> The phrase "in the course of" refers to time, place, and circumstances, and "arising out of" refers to cause or origin. "[A]n injury by accident to an employee is in the course of employment if it occurred while he was performing a duty he was employed to do; and it is an injury arising out of employment if caused by a hazard incident to such employment." Generally, an injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment.

Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 676 (Tenn. 1991) (citations omitted). "Except in the most obvious, simple and routine cases," a claimant must establish by expert medical evidence the causal relationship between the claimed injury and the employment activity. Id. That relationship must be established by the preponderance of the expert medical testimony, as supplemented by the lay evidence. "Although causation in a workers' compensation case cannot be based upon speculative or conjectural proof, absolute certainty is not required because medical proof can rarely be certain . . . ." Clark v. Nashville Mach. Elevator Co., 129 S.W. 3d 42, 47 (Tenn. 2004); see also Glisson v. Mohon Int'l, Inc./Campbell Ray, 185 S.W.3d 348, 354 (Tenn. 2006). All reasonable doubts as to the causation of an injury and whether the injury arose out of the employment should be resolved in favor of the employee. Phillips v. A&H Constr. Co., 134 S.W.3d 145, 150 (Tenn. 2004).

Further, an employer takes an employee "as is" and assumes the responsibility for any work-related injury which might not affect an otherwise healthy person, but which aggravates a pre-existing injury. Hill v Eagle Bend Mfg., Inc., 942 S.W.2d 483, 488 (Tenn. 1997). In consequence, an employer is "liable for disability resulting from injuries sustained by an employee arising out of and in the course of his employment even though it aggravates a previous condition with resulting disability far greater than otherwise would have been the case." Baxter v. Smith, 364 S.W.2d 936, 942-43 (Tenn. 1962). The law in this state likewise recognizes that a worker may sustain a compensable gradual injury as the result of continual exposure to the conditions of employment. See Cent. Motor Express, Inc. v. Burney, 377 S.W.2d 947, 948-50 (Tenn. 1964). Unlike some other jurisdictions, there is no requirement in this state that the injury be traceable to a definite moment in time or triggering event in order to be compensable. Id. at 948.

When there is conflicting medical testimony, the trial judge must choose which view to accredit. In Orman, we provided several factors for consideration, including "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." 803 S.W.2d at 676.

The medical proof in this case was taken by deposition, so the weight and credibility must be assessed from the contents of the transcripts admitted at trial. In that regard, we may make our own assessment of the evidence to determine where the preponderance of the evidence lies. Crew, 259 S.W.3d at 665; Wilhelm, 235 S.W.3d at 127. Dr. Harrison, who treated the Employee three times over a two month period, testified that his medical notes indicated that the Employee had "denied any specific incident that brought on his symptoms," and "recalled no remote major trauma to the wrist." He found swelling and ordered x-rays, which "revealed obvious degenerative changes in the [right] radioscaphoid joint." Dr. Harrison noted some "bogginess" of the Employee's wrist condition and diminished motion, and his diagnosis, to a reasonable degree of medical certainty, was that the Employee was "experiencing arthritis in his right wrist . . . [that] was moderate to severe." Because there was no other medical information provided to Dr. Harrison, and because there was no specific injury noted, he believed that the Employee had "a degenerative condition of the right wrist, and the etiology is uncertain." It was his opinion that the cause of the degenerative condition could not be identified because no other medical history on the Employee existed. He could not "attribute his work to the etiology of the degenerative arthritis," explaining that the causation of arthritis is unknown.

Dr. Kennedy's medical history of the Employee indicated that a deep pain developed in the right wrist as a culmination of his work activities on October 28, 2004. After finding "moderate dorsal radial swelling in the right wrist with readily palpable prominence of the proximal end of the scaphoid," Dr. Kennedy, based upon a reasonable degree of medical certainty, made a diagnosis of "[s]capholunate dissociation with radiolunate osteoarthritis of the right wrist." He opined that the Employee's job responsibilities on October 28, 2004 were "the cause" of the condition, "to the extent that the work aggravated and advanced the pre-existing separation of the scapholunate bone and the osteoarthritis and aroused it from a dormant condition not causing any symptoms into a continuously painful and disabling condition."

In addition to the medical proof as to causation, we must also consider the testimony of the Employee, who testified that he had never experienced pain in his wrist when it "went out" and "knotted up" as he was performing his work duties in October of 2004. He immediately notified his supervisor and received medical attention from Dr. Smith a few days later, which included x-rays and physical therapy. He testified that he had received injections from Dr. Harrison, tried to work within his recommended restrictions, wore a splint, endured the pain, and continued to work with one hand and no lost time. The trial judge accredited the Employee's testimony.

Expert medical testimony is crucial to the outcome of this case. In ruling, the trial court relied on Dr. Kennedy's assessment that the Employee's work caused the painful dissociation, the

work "aggravated and advanced the pre-existing separation of the bone and the arthritis," and cumulative trauma "tipped the scale" as to the causation of the injury. Dr. Harrison, while describing arthritis as an aging phenomena, was less certain. While he did admit that the Employee's job activities could "exacerbate [his underlying arthritis] in the way of bringing on symptomatology," he could not say whether they worsened the actual pathology of the wrist.

In support of its position, the Employer cites to Cunningham v. Goodyear Tire & Rubber Co., 811 S.W.2d 888 (Tenn. 1991), wherein recovery was denied even though the "work for Goodyear aggravated [the employee's] preexisting condition by making the pain worse but it did not otherwise injure or advance the severity of his osteoarthritis." Id. at 891. We ruled that an aggravation of a pre-existing condition which merely increased the level of pain did not constitute a compensable injury. Id. at 890-91.

In Trosper v. Armstrong Wood Products, ___ S.W.3d ___ (Tenn. 2008), we faced a situation similar to the present case. Trosper began working for Armstrong, a manufacturer of flooring products, in 1993. In 1997 and 1998, he sorted and stacked heavy pieces of lumber. During this time, he developed pain in both of his hands and was referred to a physician. Trosper continued to work for Armstrong for several years and was moved at one point to a position moving and stacking veneer. In 2000 or 2001, he moved to a job, which involved repeatedly lifting forty-five-to-seventy-pound wire-handled buckets of chemicals to shoulder level and pouring them into a hopper. In 2004, Trosper was diagnosed with bilateral carpometacarpal osteoarthritis. He had two fusions in his hands and retired after the second surgery. There was medical testimony that Trosper's work both stacking lumber and lifting buckets of chemicals permanently aggravated and advanced the pre-existing osteoarthritic condition in both of his thumbs and caused the painful instability of those joints, which ultimately necessitated the surgery. The trial court found that Trosper's pre-existing arthritis was worsened and advanced by his work and awarded disability benefits. ___ S.W.3d at ___. On appeal, we determined that our ruling in Smith v. Smith's Transfer Corp., 735 S.W.2d 221 (Tenn. 1987), provided the proper framework where an employee seeks compensation on the grounds that a work injury has aggravated a pre-existing condition. In an effort to develop some clarity in these difficult cases, we adopted the following rule in Trosper:

> We reiterate that the employee does not suffer a compensable injury where the work activity aggravates the pre-existing condition merely by increasing the pain. However, if the work injury advances the severity of the pre-existing condition, or if, as a result of the pre-existing condition, the employee suffers a new, distinct injury other than increased pain, then the work injury is compensable.

___ S.W.3d at ___.

Our examination of the evidence in this case leads us to the conclusion that the Employee carried his burden of proof by establishing that the work injury advanced the severity of the pre-existing condition. There was credible testimony from the Employee that the onset of his initial symptoms were triggered by an accumulation of repetitive actions that manifested itself on October

28, 2004.  Like Trosper, the Employee had a pre-existing, progressive arthritic condition. Drs. Harrison and Kennedy, who both were well-qualified, agreed that the Employee's underlying arthritic condition was not caused by his employment.  They also agreed that the condition was progressive.  According to the Employee, the work caused his condition to be symptomatic.  Dr. Kennedy made the following observation:

> I concluded that the work that Mr. Cloyd described on October 28, 2004, was the cause of the painful scapholunate dissociation and osteoarthritis in his right wrist, that is to the extent that work aggravated and advanced the pre-existing separation of the scapholunate bone and the osteoarthritis and aroused it from a dormant condition not causing any symptoms into a continuously painful and disabling condition.

Although an increase in the level of pain alone is not enough to be compensable, there was evidence that the incident on October 28, 2004, actually triggered the onset of pain and swelling in the hand. Dr. Harrison, who diagnosed the arthritis, stated that it was a degenerative and progressive condition and opined that the Employee's work – in absence of a specific injury – would not be the cause of his arthritis.  The swelling was apparent, and the range of motion reduced.  He further found the Employee to be a "truthful" patient.  Dr. Kennedy identified the Employee's work as an aggravation or advancement of the pre-existing condition.  He opined that the "cumulative trauma" had "reached its climax in doing its damage" on October 28, 2004, when the Employee's wrist "knotted up." Because the Employee has shown that he suffered a work injury that advanced the severity of his pre-existing arthritic condition, we hold that the trial court did not err in compensating him for that injury.

### B. Statute of Limitations

The Employee filed this action to recover workers' compensation benefits on March 3, 2006. The incident at work that triggered the onset of the arthritis' symptomology occurred some sixteen months prior to that, on October 28, 2004.  On that basis, the Employer contends that the suit is barred by the one-year statute of limitations.  Conversely, the Employee argues that the limitations period was tolled until March 10, 2005, which was the date of his last authorized treatment by Dr. Harrison.  The trial court agreed with the Employee and concluded that because the limitations period began on that date, the Employee's claim was not precluded.

The legislature amended the statute of limitations for workers' compensation claims in Tennessee in 2004.  Because the Employee's work injury took place prior to January 1, 2005, the older statutory regime applies. 2004 Tenn. Pub. Acts., ch. 962, §§ 15 & 51.  For injuries occurring prior to January 1, 2005, "[a]ctions or proceedings by an injured employee to determine or recover compensation" are limited to those filed "one (1) year after the occurrence of the injury, except as provided in [Tennessee Code Annotated section] 50-6-203."  Tenn. Code Ann. § 50-6-224(a)(1) (1999).  Section 50-6-203 provided as follows:

> The right to compensation under the Workers' Compensation Law shall be forever barred, unless, within one (1) year after the accident resulting in injury or death occurred, the notice required by § 50-6-202 is given employer and a claim for compensation under the provisions of this chapter is filed with the tribunal having jurisdiction to hear and determine the matter; provided, that if within the one-year period voluntary payments of compensation are paid to the injured person or the injured person's dependents, an action to recover any unpaid portion of the compensation, payable under this chapter, may be instituted within one (1) year from the latter of the date of the last authorized treatment or the time the employer shall cease making such payments. . . .

Tenn. Code Ann. § 50-6-203(a) (1999) (emphasis added). Our task is to determine whether the evidence preponderates against the trial court's conclusion that the "date of the last authorized treatment" provision applied, thus tolling the statute of limitations until March 10, 2005.

The Tennessee Rules of Civil Procedure apply to all civil actions; however, the Rules are subject to any more specific provisions in our Workers' Compensation Law. Martin v. Lear Corp., 90 S.W.3d 626, 629-30 (Tenn. 2002). Because Tennessee Code Annotated section 50-6-203 contains no language addressing the burden as to the applicability of the statute of limitations, cases decided under the Rules are instructive. The statute of limitations is an affirmative defense, Tenn. R. Civ. P. 8.03; therefore, the burden of proof rests upon the defendant. Ingram v. Earthman, 993 S.W.2d 611, 632-33 (Tenn. Ct. App. 1998); Jones v. Hamilton County, 405 S.W.2d 775, 779 (Tenn. Ct. App. 1965); see also Blankenship v. Mars, Inc., No. 03S01-9709-CH-00105, 1999 WL 77257, at *3 (Tenn. Workers' Comp. Panel Feb. 18, 1999) (citing Lunsford v. A.C. Lawrence Leather Co., 225 S.W.2d 66, 69 (Tenn. 1949)) ("[T]he employer has the burden of proof to establish facts which the employer claims as a bar to the [workers'] compensation claim, such as the expiration of the statute of limitations."). When, however, a defendant establishes an affirmative defense, the burden shifts to the plaintiff to demonstrate a recognized exception. Earthman, 993 S.W.2d at 633; Jones v. Coal Creek Mining & Mfg. Co., 180 S.W. 179, 182 (Tenn. 1915); see also Bradshaw v. Claridy, 375 S.W.2d 852, 856 (Tenn. 1964) (holding that where a workers' compensation claim is prima facie barred by the one-year statute of limitations, the claimant bears the burden of proof to show that his claim falls within an exception that would permit his action to go forward).

Circumstantial evidence may be used to preclude a defendant's reliance upon the statute of limitations in a workers' compensation case. Giles County Bd. of Educ. v. Hickman, 547 S.W.2d 944, 946 (Tenn. 1977). Here, there was circumstantial evidence that the Employer compensated the Employee within the one-year period after the injury, thus tolling the limitations period prescribed in Tennessee Code Annotated section 50-6-203 to the date of the last authorized medical service. To meet his burden of proof, the Employee need not show that his medical bills were actually paid by the Employer. Blocker v. Reg'l Med. Ctr. at Memphis, 722 S.W.2d 660, 662-63 (Tenn. 1987) ("[T]he expenses of medical care or treatment actually rendered by a designated physician to whom the employee has been referred by the employer need not be paid in fact to constitute voluntary

compensation within the meaning of T.C.A. § 50-6-203."); Crowder v. Klopman Mills, 627 S.W.2d 930, 932 (Tenn. 1982). We have previously held that

> "voluntary payments of compensation" by the employer or his insurer which will toll the running of the statute of limitations . . . may consist of the furnishing of medical services through physicians or others employed by the employer or his insurer and . . . , in such cases, the statute will not begin to run until such medical services are terminated, i.e., the date of the last services thus furnished, rather than the date of payment for such services.

Norton Co. v. Coffin, 553 S.W.2d 751, 752-53 (Tenn. 1977) (citing Fields v. Lowe Furniture Corp., 415 S.W.2d 340, 343 (Tenn. 1967); see also Bowen v. Frito Lay, Inc., No. M2002-02552-WC-R3-CV, 2004 WL 913244, at *5-6 (Tenn. Workers' Comp. Panel Apr. 30, 2004).

The Employer referred the Employee to Dr. Smith, who made a referral to Dr. Harrison, a specialist in the field of orthopedic surgery. The Employee, who testified that the Employer set up the first appointment with Dr. Harrison, saw Dr. Harrison three times, receiving treatment in the form of prescribed anti-inflammatory medications and a steroid injection. The Employee testified that after the third visit on March 10, 2005, his Employer terminated the treatment. The Employee never received a bill for any of the treatment he received from either Dr. Smith or Dr. Harrison. Although the new general manager at the plant asserted that the Employee's file included no indication that the Employer had paid any of the medical bills, he had no knowledge of the actual circumstances. He also explained that the insurance carrier would have ordinarily taken care of that. From all of this, we conclude that the evidence does not preponderate against the trial court's conclusion that the suit was not barred by the statute of limitations.[2]

### C. Excessive Award

Finally, the Employer claims that the trial court's award of an impairment rating of 24% times the statutory cap of 1.5, or 36%, the maximum possible, is excessive and unwarranted. We have held that the work injury on October 28, 2004 was compensable because it advanced the severity of the Employee's pre-existing arthritic condition. Dr. Kennedy, the last doctor to examine the Employee's wrist, placed several restrictions on work activities in an effort to minimize the risk of the Employee sustaining further damage to his wrist. Moreover, the evidence establishes that the Employee continued to have pain, swelling, and a limited range of motion in his wrist. His disability limited his activities outside of the workplace. Although the Employee returned to work for the Employer in his former position, vocational disability is "measured not by whether the employee can return to [his] former job, but whether [he] has suffered a decrease in [his] ability to earn a living."

---

[2] Because we find that the evidence did not preponderate against the trial court's finding that date of the last authorized treatment tolled the one-year statute of limitations, we need not reach the Employee's alternative argument that the lawsuit was timely because the extent of his disability was not clear until his visit to Dr. Kennedy in February 2006. See Hibner v. St. Paul Mercury Ins. Co., 619 S.W.2d 109, 110 (Tenn. 1981) ("It is now settled that the date the employee's disability manifests itself to a person of reasonable diligence, not the date of the accident, triggers the statute of limitations.")

Lang v. Nissan N. Am., Inc., 170 S.W.3d 564, 570 (Tenn. 2005) (quoting Walker v. Saturn Corp., 986 S.W.2d 204, 208 (Tenn. 1998)). The evidence does not, therefore, preponderate against the disability benefits finding by the trial court.

### IV. Conclusion

The judgment of the trial court is affirmed. Costs are taxed to the Employer, Hartco Flooring Company, and its surety, for which execution may issue if necessary.


_____
GARY R. WADE, JUSTICE