FILED

**August 17, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 1:59 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| Jonathan Engler, ) | Docket No.: 2014-08-0022 |
| Employee, ) | |
| v. ) | State File No.: 71159-2014 |
| Able Moving Co., ) | |
| Employer, ) | Judge Jim Umsted |
| And ) | |
| Benchmark Insurance Companies, ) | |
| Insurance Carrier. ) | |

## COMPENSATION HEARING ORDER

This case came before the undersigned Workers' Compensation Judge for a Compensation Hearing under Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether an infection the employee, Jonathan Engler, contracted was causally related to the back injury he allegedly sustained while working for employer, Able Moving Co. The central legal issues are: (1) whether Mr. Engler sustained a compensable injury arising primarily out of and in the course and scope of his employment with Able; (2) whether Mr. Engler is entitled to payment of unauthorized, past medical expenses; (3) whether Mr. Engler is entitled to continued medical treatment for his back; and (4) whether Mr. Engler is entitled to past temporary disability benefits, and if so, in what amount. For the reasons set forth below, the Court holds Mr. Engler has failed to prove by a preponderance of the evidence that he sustained a compensable injury primarily arising out of and in the course and scope of his employment such that he would be entitled to the requested medical and temporary disability benefits.

### History of Claim

The following facts were established at the Compensation Hearing held on August 10, 2016. Mr. Engler is a forty-five-year-old resident of DeSoto County, Mississippi, who worked as a mover for Able for approximately six years. On September 2, 2014, Mr. Engler reported a work-related injury to his back after lifting at work.[1]

---

[1] Mr. Engler testified he initially felt a pop or pull in his low back on or about August 29, 2014, while helping move

1

After his injury, Mr. Engler sought various medical treatments. Mr. Engler presented to the emergency room at Baptist Memorial Hospital on September 5, 2014, with complaints of low back pain, left hip pain, and a high fever. Mr. Engler initially received treatment from his primary care physician, Dr. Cary Finn, who admitted Mr. Engler for inpatient care after diagnosing him with Methicillin resistant Staphylococcus aureus (MRSA) septicemia. Dr. Finn consulted with infectious disease specialist Dr. William Mason who recommended intravenous antibiotic treatment. Dr. Finn discharged Mr. Engler from the hospital on September 12, 2014, noting that Mr. Engler would continue his antibiotic regimen for another six weeks and would follow up with Dr. Mason.

On October 8, 2014, Able provided Mr. Engler with a panel of orthopedic physicians from which he selected Dr. James Varner as his authorized treating physician. At the time of Mr. Engler's initial visit with Dr. Varner on October 29, 2014, all of his symptoms had resolved. Dr. Varner indicated that no additional treatment was warranted, and he released Mr. Engler to regular-duty work status with no permanent impairment. Mr. Engler returned to see Dr. Varner on one subsequent occasion, complaining of recurrent left lower lumbar symptoms. During that visit, Dr. Varner referred Mr. Engler to neurosurgeon Dr. John Brophy, who evaluated Mr. Engler and opined that his recurrent symptoms resulted from lumbar inflammation caused by his new onset diabetes[2] and MRSA sepsis. Dr. Brophy did not recommend any further treatment for Mr. Engler's back. Instead, he instructed Mr. Engler to return as needed and released him to full-duty work status.

The parties offered medical proof by deposition on the issue of causation from Drs. Finn, Mason, Brophy, Parisioon and Gelfand. Their testimony conflicted regarding the cause of Mr. Engler's injuries.

Both Dr. Finn and Dr. Mason testified in their depositions that Mr. Engler's work-related back injury contributed more than fifty percent in causing his infection and the need for medical treatment, considering all causes. Dr. Mason explained that the work-related back injury caused inflammation in Mr. Engler's paraspinal muscles that allowed the infection to develop. (Ex. 6 at 17.) While Dr. Mason admitted diabetes can contribute to the development of an infection like MRSA, he testified Mr. Engler's work injury contributed well above seventy-five percent in allowing bacteria to gain a foothold in that area, thus causing the infection. (Ex. 6 at 30.) He testified that he has observed other patients develop MRSA after lifting something and sustaining a back injury and estimated that he saw this type of situation "once a month to every four months." (Ex. 6

---

a piano at work that resulted in a dull pain in his back and left hip. He further testified that on September 2, 2014, he moved many heavy boxes weighing fifty pounds or more, which led to an increase in his pain.

[2] Mr. Engler testified he checks his blood sugar every week, and he has not had an issue with his blood sugar since returning to work. In addition, he no longer takes diabetes medication.

at 64.) According to Dr. Mason, "[s]taph infections of this nature and bloodstream infections typically develop over the course of hours to maybe a day." (Ex. 6 at 41.)

To the contrary, deposition testimony of Dr. Brophy, Dr. Fereidoon Parsioon, and Dr. Michael Gelfand[3] conflict with the causation opinions of Drs. Finn and Mason. Each of these physicians opined that Mr. Engler's work-related back injury did not contribute more than fifty percent to causing his infection and the need for medical treatment.

Dr. Brophy related Mr. Engler's hospitalization and treatment for the sepsis to his diabetes rather than to his work-related back injury. (Ex. 1 at 11.) Dr. Brophy testified that Mr. Engler's staph infection caused the inflammation in his paraspinal muscles. (Ex. 1 at 14, 31-32.) He further testified he has never seen someone develop a staph infection from lifting. (Ex. 1 at 14.)

Dr. Parsioon, a neurosurgeon, testified Mr. Engler's diagnostic testing showed no abscess inside the spine, no fracture, no ruptured disc, and no impingement of the neuro structure. (Ex. 3 at 13-14.) He opined the findings in Mr. Engler's paraspinal muscles were related to infection but testified there was no way to prove the source of the infection because a biopsy was never performed. (Ex. 3 at 14.) He specifically testified, "You can't lift something and get septicemia. This man did not have just a simple muscle infection if that was infection. He had septicemia, which is a serious blood infection, and so lifting doesn't cause that." (Ex. 3 at 19.)

Dr. Gelfand, an infectious disease specialist, also disagreed with Dr. Finn and Dr. Mason. He testified, "[T]he relationship between trauma and this infection is highly speculative and is really not supported by the general medical literature." (Ex. 2 at 12-13.) Conversely, Dr. Gelfand indicated, "diabetes is a well recognized [sic] risk factor . . . and is viewed as such in the medical literature as compared to any potential trauma." (Ex. 2 at 11-12.) He further concluded,

> [I]t is medically improbable for the infection to manifest itself . . . within 24 hours with a fever because what would happen if you had trauma to the site and the germs got into it, it would take several days for them to proliferate before they would manifest themselves with a clinical illness of fever, back pain and bacteremia.

(Ex. 2 at 11.)

Mr. Engler testified he returned to work, but was unable to work due to treatment for his infection from September 2, 2014, until October 30, 2014. He further testified he

---

[3] Dr. Fereidoon Parsioon and Dr. Michael Gelfand each reviewed Mr. Engler's medical records and provided causation opinions to Able based on their review of the records. Neither of these physicians ever evaluated or treated Mr. Engler.

continues to have back pain after long days at work and continues to take anti-inflammatories for his back. He asked the Court to order Able to provide continued medical treatment for his back as well as to pay for past medical expenses and temporary disability benefits related to the treatment of his infection.

Able presented no competing testimony to oppose Mr. Engler's description of his back injury, but it did point out that Mr. Engler failed to advise Dr. Finn and Dr. Mason of any work-related back injury when he initially presented to the hospital. It also pointed to some additional possible causes of Mr. Engler's infection, including his new onset diabetes, a prior nasal abscess, and chigger bites on his feet. It argued, based on the medical proof presented, that Mr. Engler had not met his burden of proving his infection primarily arose out of and in the course and scope of his employment.

### Findings of Fact and Conclusions of Law

*General Legal Principles*

Mr. Engler has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff,* No. 2014-05-0005, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015). *See also* Tenn. Code Ann. § 50-6-239(c)(6) (2015) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence."). In this case, the Court must interpret the Workers' Compensation Law fairly, impartially, and without favor for either Mr. Engler or Able. Tenn. Code Ann. § 50-6-116 (2015).

*Compensability of Mr. Engler's Injuries*

This Court must first address whether Mr. Engler has sustained the burden of proving his infection was causally related to lifting at work. To be compensable under the Workers' Compensation Law, an injury must arise primarily out of and occur in the course and scope of the employment; be caused by an incident or specific set of incidents; and be identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14) (2015). Also, medical evidence is generally required in order to establish a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Cloyd v. Hartco Flooring Co.,* 274 S.W.3d 638, 643 (Tenn. 2008) (quoting *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991)).[4] The Court holds this is

---

[4] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation

4

not an obvious, simple and routine case, and medical evidence is required to establish a causal relationship. Therefore, the medical causation issue regarding the infection must be resolved by an analysis of the medical evidence submitted in the deposition testimony of the various physicians.

It is well established that a "trial judge has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Payne v. UPS*, No. M2013-02363-SC-R3-WC, 2014 Tenn. LEXIS 1112, at *18 (Tenn. Workers' Comp. Panel Dec. 30, 2014). When there are conflicting medical opinions, "the trial judge must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

Under Tennessee Code Annotated section 50-6-102(14)(E) (2015), "[t]he opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Also, Tennessee Code Annotated section 50-6-204(a)(3)(E) (2015) provides where the treating physician refers the employee to a specialist physician, the specialist shall become the treating physician.

In this case, there is a conflict in opinion among the physicians who testified. The Court holds that Dr. Brophy is a statutory "treating physician" as he was a specialist physician referred by Dr. Varner, the "treating physician" selected by Mr. Engler from Able's designated panel. As a statutory "treating physician," Dr. Brophy's opinion is entitled to a presumption of correctness on the issue of causation. Dr. Brophy testified Mr. Engler's staph infection caused the inflammation in his paraspinal muscles. He further testified he has never seen someone develop a staph infection from lifting. Dr. Parsioon, a neurosurgeon, and Dr. Gelfand, an infectious disease specialist, conducted a review of the records at the request of Able. Dr. Parsioon testified Mr. Engler had a serious blood infection; however, it was not caused by lifting. Dr. Gelfand likewise testified that in this case the relationship between trauma and the infection was highly speculative.

To the contrary, Dr. Finn, an internal medicine specialist, and Dr. Mason, an infectious disease specialist, testified Mr. Engler's work-related lifting injury contributed more than fifty percent in causing his infection. Dr. Mason opined the work-related

Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

5

injury caused inflammation in Mr. Engler's paraspinal muscles that allowed the infection to develop.

The Court finds all of these physicians are highly qualified, and their opinions well-reasoned, making this a very difficult case to decide. However, after careful consideration of the testimony of these physicians, the Court finds the opinion of Dr. Brophy, which was supported by the testimony of Drs. Gelfand and Parsioon, is entitled to the statutory presumption of correctness. The Court further finds this presumption was not rebutted by a preponderance of the evidence. Therefore, based upon the evidence and the applicable legal principles, the Court holds Mr. Engler failed to sustain the burden of proving by a preponderance of the evidence his infection was a compensable injury. This decisive issue having been determined, the Court need not rule on any other issues. Accordingly, it is the Court's determination Mr. Engler is not entitled to the requested benefits.

IT IS, THEREFORE, ORDERED that the claim of Mr. Engler against Able or its workers' compensation carrier for the requested medical and temporary disability benefits be denied.

The filing fee for this this cause is taxed to Able under Rule 0800-02-21-.07 (2015) of the Tennessee Compilation Rules and Regulations.


**ENTERED this the 17th day of August, 2016.**

**Judge Jim Umsted**
**Court of Workers' Compensation Claims**


Right to Appeal:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal your case to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty calendar days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the party who filed the notice of appeal shall have fifteen calendar days after the issuance of the docketing notice to submit a brief to the Appeals Board for consideration. Any opposing party shall have fifteen calendar days after the filing of the appellant's brief to file a brief in response. No reply briefs shall be filed. Briefs shall comply with the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03(6) (2015).

To appeal your case directly to the Tennessee Supreme Court, the Compensation Order must be "final" (see Tennessee Code Annotated section 50-6-239(c)(7)) and you must comply with the Tennessee Rules of Appellate Procedure.

## APPENDIX

Technical record:
- Petition for Benefit Determination, filed August 27, 2015;
- Dispute Certification Notice, filed October 1, 2015;
- Request for Initial Hearing, filed November 17, 2015;
- Initial Hearing Order, issued December 17, 2015;
- Order Continuing Compensation Hearing, issued February 26, 2016;
- Amended Initial Hearing Order, issued June 30, 2016;
- Able's List of Witnesses for Trial, filed July 7, 2016;
- Able's List of Unresolved Evidentiary Issues, filed July 11, 2016;
- Able's List of Exhibits for Trial and Statement Concerning Copies of the Proposed Exhibits, filed July 11, 2016;
- Able's Supplemental List of Exhibits for Trial and Statement Concerning Copies of the Proposed Exhibits, filed July 29, 2016;
- Pre Compensation Hearing Statement, filed August 1, 2016;
- Mr. Engler's Pre-Trial Brief, filed August 1, 2016;
- Able's Trial Brief, filed August 2, 2016; and
- Dispute Certification Notice, filed August 5, 2016.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Stipulated Findings of Facts of the Parties:
- Mr. Engler's date of injury is September 2, 2014.
- Mr. Engler gave notice of the alleged injury to Able on September 2, 2014.
- Mr. Engler is forty-five years of age and is a resident of DeSoto County, MS.
- Mr. Engler has obtained a high school diploma and completed education through vocational school.
- Mr. Engler received authorized medical treatment for the injury with the following medical providers: Dr. James Varner and Dr. John Brophy. Medical expenses were paid by Able or its workers' compensation insurance carrier/administrator in the amount of $1,961.66.
- Mr. Engler reached the maximum level of medical improvement that the nature of the injury permits on October 29, 2014.
- Mr. Engler did not receive any temporary disability benefits. Mr. Engler has returned to work for the Able, earning the same or greater wages as he was earning prior to the injury.

- Mr. Engler's average weekly wage is $448.44, which entitles him to a weekly compensation rate of $298.96.

Stipulated Conclusions of Law of the Parties:
- The claim is governed by the Workers' Compensation Laws for the state of Tennessee.
- An employment relationship existed between the Mr. Engler and Able at all relevant times.
- Mr. Engler provided proper, statutory notice of the injury.
- Mr. Engler filed a Petition for Benefit Determination within the applicable statute of limitations.

Exhibits:
- EXHIBIT 1: Deposition transcript of Dr. John Brophy;
- EXHIBIT 2: Deposition transcript of Dr. Michael Gelfand;
- EXHIBIT 3: Deposition transcript of Dr. Fereidoon Parsioon;
- EXHIBIT 4: Collective exhibit of medical records filed by Employer on July 11, 2016;
- EXHIBIT 5: Deposition transcript of Dr. Cary Finn;
- EXHIBIT 6: Deposition transcript of Dr. William Mason;
- EXHIBIT 7: Form C-41 Wage Statement; and
- EXHIBIT 8: Form C-42 Agreement Between Employer/Employee Choice of Physician.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the __17th__ day of August, 2016.

| Name | Certified Mail | Via Fax | Via Email | Email Address |
|------|---------------|---------|-----------|---------------|
| Richard Click, Employee's Attorney | | | X | rclick@tcmfirm.com |
| Jared Renfroe, Employer's Attorney | | | X | jrenfroe@spicerfirm.com |

Penny Shrum, Clerk
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov