**FILED**

**May 3, 2018**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 12:22 PM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT COOKEVILLE

| | | |
|---|---|---|
| **ALICE HUNT,** | ) | **Docket No. 2017-05-0720** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 50419-2017** |
| | ) | |
| **KROGER,** | ) | **Judge Robert Durham** |
| **Employer.** | ) | |

---

### EXPEDITED HEARING ORDER DENYING BENEFITS

---

The Court conducted an expedited hearing on April 26 to determine whether complications arising from Ms. Hunt's diabetes and hypertension causally relate to her work for Kroger on May 10, 2017. The Court holds Ms. Hunt did not provide sufficient evidence to establish she is likely to prove at trial that these complications arose primarily out of and in the course of her employment. Thus, her request for benefits is denied.

### History of Claim

Ms. Hunt, age sixty-two, has suffered from insulin-dependent diabetes, hypertension, and congestive heart failure for several years. Because of diabetes, she also suffered from peripheral neuropathy so severe that she complained to her doctor in 2014 that she couldn't feel her toes on her right foot.

In 2016, Ms. Hunt began working part-time for Kroger as a "courtesy clerk." Her duties included bagging groceries, taking them to the customer's vehicle if necessary, and periodically bringing in buggies from the parking lot. In December 2016, Ms. Hunt asserted a workers' compensation claim, stating she broke her fourth toe on her foot when she ran over it with a shopping cart. Shortly afterward, she filed a complaint against her supervisor, Lisa Stovall, alleging harassment in retaliation for the claim.

While treating her toe, Ms. Hunt's authorized provider restricted her from gathering buggies from the parking lot. In April 2017, Ms. Stovall learned the doctor removed Ms. Hunt's restrictions and required her to resume full duties.

1

While at work on April 17, Ms. Hunt experienced an episode of extremely high blood pressure. A Kroger pharmacy tech became so concerned that he drove Ms. Hunt to the hospital, where she received treatment to bring her blood pressure down to safe levels. That same day, Ms. Hunt called the office of Dr. Matthew Murphey, a podiatrist authorized to treat her foot injury, because she was concerned that the medication for her foot caused her high blood pressure. Dr. Murphey advised against taking Mobic but also noted that her blood pressure "could still be high if she's moving carts and her foot is still hurting."[1]

On April 26, Ms. Hunt again called Dr. Murphey's office. She stated she stopped taking the medication but her blood pressure remained high. On the same day, Ms. Hunt also contacted her personal physician, Dr. Thomas Smith, and requested a note relieving her of buggy duties. Dr. Smith wrote a note stating, "This patient's diabetic feet prevent her from outside heavy labor such as shopping cart manipulation." Ms. Hunt delivered the note to Kroger management; however, she testified that it's management informed her that it would not accept work restrictions unless they were from authorized physicians.

On the afternoon of May 10, Ms. Stovall asked Ms. Hunt to retrieve buggies. Ms. Stovall testified that she initially went to the parking lot with her, but Ms. Hunt disputed this contention. Both testified it was warm outside, but Ms. Stovall stated it was not unusually hot for May. In any event, at some point, Ms. Hunt was the only Kroger employee in the lot. While working, she lost consciousness and fell to the pavement. Ms. Hunt did not identify any hazards in the lot that caused her to fall, nor did she state she struck anything when she passed out.

A customer called emergency services, who took Ms. Hunt to the hospital after she regained consciousness. The emergency room note stated Ms. Hunt reported feeling lightheaded while pushing a string of shopping carts and the next thing she remembered was waking up on the ground. She denied a history of similar events. Ms. Hunt's blood pressure was elevated to 240/120. The hospital made "multiple attempts" to get her blood pressure under 200 without success. The hospital admitted Ms. Hunt for uncontrolled hypertension following a "syncopal episode." Ms. Hunt stayed in the hospital until May 12 while her medication was adjusted to control her hypertension.

Ms. Hunt did not return to work for Kroger. She testified that she did not feel she could perform her duties given her health.

---

[1] The toe injury was not part of this request for benefits. Dr. Murphey ultimately determined that Ms. Hunt's fracture completely healed and any pain she felt was due to peripheral neuropathy unrelated to the injury.

In October, Ms. Hunt sought treatment for a detached retina. She informed the ophthalmologist that she fell in May and her vision declined since that time. The ophthalmologist diagnosed her with "proliferative diabetic retinopathy with traditional retinal detachment." He also indicated the condition was "likely chronic given [patient's] timeline."

In January 2018, Ms. Hunt was hospitalized for a week and ultimately underwent surgery on her left foot due to a diabetic, left-foot ulceration with abscess. According to the discharge diagnosis, Ms. Hunt suffered from MRSA and diabetes mellitus. Ms. Hunt asserted the ulceration was due to turning her left ankle when she passed out at Kroger.

Ms. Hunt asserted her syncopal episode and uncontrolled hypertension in May 2017 were primarily caused by the stress and strain of pushing shopping carts in hot weather. She also asserted her inability to return to work at Kroger, her retinal detachment, and the left-foot ulceration all stemmed from the May 2017 incident. Kroger contested these assertions and argued Ms. Hunt did not provide any medical opinions to support her contentions.[2]

## Findings of Fact and Conclusions of Law

Ms. Hunt need not prove every element of her claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, she must present sufficient evidence that she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Thus, the question is whether Ms. Hunt established she is likely to prevail in proving that her health problems arose primarily from pushing shopping carts in the Kroger parking lot in May 2017. *Id.* The Court holds she did not.

In order to establish causation, Ms. Hunt must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2017). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

---

[2] Ms. Hunt attempted to introduce several pages of medical bills as exhibits. Kroger objected due to lack of foundation as to the reasonableness and necessity of the expenses. The Court sustained the objection and made the bills exhibits for identification only.

Here, no medical evidence establishes a connection between Ms. Hunt's work activity and her syncopal episode. The only possibilities are Dr. Murphey's note in April that indicated pushing shopping carts in combination with foot pain "could" cause elevated blood pressure and Dr. Smith's April 26 note restricting Ms. Hunt from manipulating shopping carts due to her "diabetic feet." However, the Court cannot hold that this slight evidence is sufficient to establish that Ms. Hunt is likely to prevail at a hearing on the merits regarding causation. Ms. Hunt's claims regarding temporary disability, retinal detachment, and her foot ulceration are even more tenuous, especially given her documented history of diabetes and uncontrolled hypertension.

The Court further holds that Ms. Hunt's evidence is insufficient to establish she is likely to prevail at trial even with regard to the provision of a panel of physicians. *See* Tenn. Code Ann. § 50-6-204. Medical evidence is generally required in order to establish a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008). In Ms. Hunt's case, a number of physicians treated her after her syncopal episode in May 2017. She did not provide an opinion from any of them supporting her position regarding causation. At this point, Ms. Hunt only offered speculation and conjecture as to the cause of her numerous symptoms, which cannot serve as justification for the provision of benefits. *See Shelton v. Torrington Co.*, No. 01501-9704-CV-00092, 1998 Tenn. LEXIS 107995, at *10 (Tenn. Workers' Comp. Panel Mar. 13, 1998) (citing *Reeser v. Yellow Freight*, 938 S.W.2d 690, 692 (Tenn. 1997)).

**IT IS, THEREFORE, ORDERED** that:

1. Ms. Hunt's request for workers' compensation benefits is denied at this time.

2. This matter is set for a Scheduling Hearing/Status Conference on June 14, 2018, at 2:00 p. m. Central Time. The parties must call 615-253-0010 or toll-free at 866-689-9049 to participate in the hearing. Failure to call in may result in a determination of the issues without the party's participation.

**ENTERED MAY 3, 2018.**

ROBERT V. DURHAM, JUDGE
**Court of Workers' Compensation Claims**

4

# APPENDIX

<u>Exhibits</u>:

1. Wage statement
2. Dr. Murphey's medical records
3. Job description
4. Additional medical records
5. Note from Dr. Smith
6. Police incident report
7. Medical bills (for I.D.)
8. Records from Southern Tennessee Regional Medical Center
9. Medical bills (for I.D.)
10. Doctor's excuse
11. Hospital E.R. records
12. Vanderbilt University Medical Center records
13. Medical bills (for I.D.)
14. Work Status Notes
15. Medical records regarding hospitalization for ulceration
16. Photos of ulceration
17. Medical bills (for I.D.)
18. Ms. Hunt's affidavit
19. Subpoena for surveillance tape
20. Medical records submitted by Kroger

<u>Technical Record</u>:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Order of Continuance
5. Amended Notice of Expedited Hearing
6. Kroger's Response to Expedited Hearing
7. Kroger's Witness and Exhibit List

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on May 3, 2018.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Alice Hunt, Self-Represented Employee | X | | X | 401 N. Bratton Street Decherd, TN 37324 jaceypage109@gmail.com |
| Doug Dooley, Employer's Attorney | | | | doug.dooley@leitnerfirm.com |

PENNY SHRUM, COURT CLERK
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**