

FILED

February 25, 2015

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:42 PM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

EMPLOYEE: Benjamin S. Cooke

DOCKET #: 2014-06-0059

EMPLOYER: Williamson County Parks and Recreation

STATE FILE #: 83555-2014

INSURANCE CARRIER:  Self-insured

DATE OF INJURY: October 17, 2014

### EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Benjamin Cooke, Employee. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court hereby finds as follows:

On January 15, 2015, Mr. Cooke filed a Request for Expedited Hearing with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation pursuant to Tennessee Code Annotated section 50-6-239 to determine if Employer, Williamson County Parks and Recreation ("the County"), shall provide medical benefits. The undersigned Workers' Compensation Judge conducted a telephonic Expedited Hearing on February 18, 2015. Mr. Cooke represented himself. Lisa Carson represented the County. After considering the parties' arguments, the applicable law, the technical record, and all testimony and evidence introduced, the Court concludes that Mr. Cooke is not entitled to the requested benefits at this time.

### ANALYSIS

#### Issue

*Whether Mr. Cooke sustained an injury that arose primarily out of and in the course and scope of employment with the County.*

#### Evidence Submitted

The Court admitted into evidence the exhibits below:

1. Williamson Medical Center medical records

1

2. Dr. Ronald G. Derr medical records
3. Form C-41, Wage Statement, December 22, 2014
4. Employer's position statement, December 3, 2014
5. Affidavit of Clarence Edgmon
6. Affidavit of Cliff Pewitt
7. Affidavit of Lucas Sullivan
8. First Report of Injury, prepared by the County, October 20, 2014
9. First Report of Injury, prepared by Mr. Cooke, November 1, 2014.

The Court designates the following as the technical record:

- Petition for Benefit Determination, November 17, 2014
- Dispute Certification Notice, December 30, 2014
- Request for Expedited Hearing, January 15, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

The following witnesses provided live testimony: Mr. Cooke, Cliff Pewitt and Laura Honaker.

**History of Claim**

Mr. Cooke is a forty-three (43) year-old resident of Williamson County and a seasonal employee for the County. He testified that on October 17, 2014, he slipped while weed-eating in wet grass near a fence in a ditch at Cheek Park. His left foot fell into the base of the ditch. Initially it felt like a "sprain" and "didn't hurt that bad." The incident happened near the end of his shift, which he completed. He went home and his foot began to swell that evening. By the next day, the pain intensified to the point that he could not walk on it.

Mr. Cooke went to the emergency room at Williamson Medical Center on October 19, 2014, at approximately 7:00 a.m. (*See generally,* Exhibit 1). Dr. Jacob Dexheimer noted as history, "He states that two days ago he was working in a ditch when he slipped and fell, hurting his left foot." Dr. James Cleveland noted, "He's also noticed increased pain to his left ankle from stepping in a hole by his account on Friday. At time he felt a pop and has noticed increased swelling." The hospital admitted Mr. Cooke, who was diagnosed with acute alcohol withdrawal, hypertension and a foot fracture. Mr. Cooke testified he was released the following day, but the medical records indicate that the hospital discharged him on October 24, 2014. The discharge notes read, "43-year male with lisfranc fx/dislocation left foot sustained Friday 10-17-2014. ... Recommend CT for left foot for treatment planning. Most likely then follow up as outpatient for any possible surgical planning." Upon discharge, Dr. Levi Benson ordered that Mr. Cooke refrain from weight-bearing, and that he follow up with an orthopedic physician.

Mr. Cooke saw Dr. Ronald Derr, an orthopedic surgeon, on October 29, 2014. Dr. Derr noted, "He apparently slipped in a ditch at Cheek Park 12 days ago and fractured his foot"

(Exhibit 2). Mr. Cooke testified, without objection, that both providers told him he needs surgery; his foot still hurts; he is unable to work; and there were no other incidents over that weekend that caused his injury.

On cross-examination, Mr. Cooke said he underwent EKGs for several days after the incident, but denied hospitalization for the entire period. He conceded that he experienced alcohol withdrawal with active hallucinations and heart palpitations during that time. He characterized his blood alcohol content upon admission as "above average," but stated, "That has nothing to do with my foot." He agreed that Clarence Edgmon and Lucas Sullivan were with him at work on the day of the incident. However, he said they were not near him the entire time he worked. He admitted he did not tell them or any other co-worker about the fall, but said it was because he did not think at the time that he had injured himself. He agreed he talked to Mr. Pewitt after the fall and asked to leave early, but said it was because they had completed their work. He said he called Mr. Pewitt to tell him about the injury on Monday, October 20, but later testified that it was Sunday, October 19. He conceded that the incident took place at approximately 12:30 or 1:00 p.m. on Friday but he did not go to the hospital until Sunday because he did not realize how badly he was hurt. He said that he stayed in bed all day on Saturday, continually iced his foot, and used a urinal because walking to the restroom was too painful. He stated that he does not know why the medical records state that his alcohol level was high "because I didn't have that much." He testified that he has never injured himself while drinking, nor has he blacked out from drinking. He said he underwent detox treatment on one previous occasion. He said he had nothing to drink on Friday, two mixed drinks on Saturday, and one or two drinks on Sunday. He stated that he clearly remembers the events of both days.

Mr. Pewitt is the park superintendent for the County. He testified that, on the day of the incident, Mr. Cooke approached his office and asked to leave early because they completed their work for the day. He described that the office is separated from the shop by plexiglass, through which he observed Mr. Cooke as he walked to and from the office. He testified that Mr. Cooke did not mention the injury to him, and did not walk with a limp or any kind of hesitancy. He said no one else told him about Mr. Cooke's fall. Mr. Pewitt stated he learned about the alleged fall when Mr. Cooke called him on Sunday, October 19, 2014.

Ms. Honaker is a risk analyst for the County. She testified that she received an injury report for Mr. Cooke on October 20, 2014, which listed the date of injury as October 17, 2014 (Exhibit 8). She additionally received an injury report from Mr. Cooke on November 5, 2014, which listed the date of injury as May 12, 2014, and a last day worked as October 16, 2014. She testified that she denied the claim because the injury did not appear to have happened during the work day.

### Mr. Cooke's Contentions

Mr. Cooke contends he sustained an accidental injury arising primarily out of and in the course and scope of his employment with the County. He has been truthful regarding the incident and subsequent events. He claims his alcohol use is irrelevant. No other potential causes for the injury exist because he stayed in bed after returning home from work on the day of the incident until he went to the hospital. Mr. Edgmon did not work on the day of the injury, and

3

Mr. Sullivan did not work near him to see all the events on the day of the incident. Mr. Pewitt's view from his office is "five or ten steps," so that he could not have observed Mr. Cooke's gait for long.

### The County's Contentions

The County contends that Mr. Cooke failed to show that the injury arose primarily out of and in the course and scope of employment. Three witnesses offered sworn affidavits attesting that Mr. Cooke did not mention slipping or injuring himself on the day of the incident. Mr. Pewitt testified he did not see Mr. Cooke limping or favoring the other foot. Given the severity of the injury as described in the medical records, had Mr. Cook sustained such an injury at work, he would have mentioned it that day to his supervisor. Mr. Cook's recollections are "spotty" because he does not recall the events of that day and the following weekend or does not wish to be forthcoming about them due to his use of alcohol.

### Findings of Fact and Conclusions of Law

#### *Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. The employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014).

#### *Factual Findings*

Mr. Cooke fractured his left foot. He was hospitalized from October 19, 2014, through October 24, 2014, to treat alcohol withdrawal and the foot injury. Mr. Cooke saw Dr. Derr, an orthopedist, on October 29, 2014. Mr. Cooke gave verbal notice of the injury and his intent to obtain treatment, in an October 19, 2014, telephone conversation with Mr. Pewitt. Mr. Cooke is a poor historian but an overall credible witness. The medical providers have not yet opined that the incident on October 17, 2014, caused the fracture.

#### *Application of Law to Facts*

*Mr. Cooke failed to show that he sustained an injury arising primarily out of and in the course and scope of his employment with the County.*

The dispositive issue in this case is whether Mr. Cooke presented sufficient evidence to prove he suffered a compensable injury.

As an initial matter, the County premises its argument, in part, upon Mr. Cooke's credibility, characterizing his recollections as "spotty" because he does not recall the events of

4

that day and the following weekend, or he does not wish to be forthcoming about them due to his alcohol use. Mr. Cooke counters that his alcohol use is irrelevant to the events of October 17, 2014, when he alleges he fell at work and injured his foot.

The Court agrees with Mr. Cooke. He gave conflicting testimony and argument regarding: Mr. Edgmon's presence on the alleged day of injury; the time of day he arrived at the hospital; the length of his stay; and whether he telephoned Mr. Pewitt to report the injury on Sunday or Monday. He additionally prepared an injury report that listed the date of injury as May 12, 2014, and his last day worked as October 16, 2014, both of which dates are incorrect. The Court notes that Mr. Cooke is a poor historian. However, his sworn account to this Court of how he injured himself is remarkably similar to the history he gave the medical providers: namely, that he slipped and fell at work while weed-eating. Even if minor and insignificant details vary, an injured worker should not be penalized simply for being a poor historian. *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 677 (Tenn. 1991).

The Court finds that Mr. Cooke provided credible testimony. In *Kelly v. Kelly*, 445 S.W.3d 685 (Tenn. 2014), the Tennessee Supreme Court held that, for the purposes of credibility determinations, telephone testimony is more akin to live testimony than to documentary evidence. *Id.* at 694. The high court gave indications of credibility that can be gleaned via telephonic testimony, such as whether the witness sounds "calm or agitated, at ease or nervous, self-assured or hesitant, steady or stammering, confident or defensive, forthcoming or deceitful, reasonable or argumentative, honest or biased." *Id.* at 694-695. In this case, Mr. Cooke sounded calm, at-ease, self-assured, steady, confident, forthcoming, reasonable and honest.

However, at this time, the Court must deny Mr. Cooke's claim because he has not demonstrated that he is likely to succeed on the merits at trial under the *McCall* standard.

Tennessee Code Annotated Section 50-6-102(13) defines an injury as follows:

> "Injury" or "personal injury" mean an injury by accident … arising primarily out of and in the course and scope of employment, that causes …the need for medical treatment of the employee; provided, that:
> (A)     An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence[.]

Tenn. Code Ann. § 50-6-102(13)(A) (2014). In this case, Mr. Cooke's testimony specifically described the event that caused his acute injury: He slipped and fell at work while weed-eating. He consistently reported this to all medical providers. He additionally identified the time and place of the occurrence, respectively, approximately 12:30 or 1:00 p.m. in a ditch near a fence at Cheek Park.

The statutory definition of "injury" additionally provides: "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance

5

of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014). In this case, as previously stated, Mr. Cooke credibly testified that the incident at work caused the injury and no other events took place to cause the injury, because after the fall he was essentially bedridden.

However, the statute further requires: "An injury causes ... the need for medical treatment only if it has been shown *to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing ... [the] need for medical treatment, considering all causes.*" Tenn. Code Ann. § 50-6-102(13)(C) (2014) (emphasis added). Longstanding Tennessee case law mirrors this requirement. Except in "the most obvious, simple and routine cases," a workers' compensation claimant must establish by expert medical testimony that he or she is injured and that there exists a causal relationship between the injury and the claimant's employment activity. *Wheetley v. State*, 2014 Tenn. LEXIS 476, No. M2013-01707-WC-R3-WC (Tenn. Workers' Comp. Panel, June 25, 2014) (*citing Excel Polymers, LLC v. Broyles*, 302 S.W.3d 268, 274 (Tenn. 2009); *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008)).

This Court thoroughly and carefully examined the records from the hospital and Dr. Derr, and concludes that no provider explicitly linked the fall Mr. Cooke described in the "history" portions of their records to their resulting diagnoses. The Legislature amended the statute in 2013 to require that a medical expert offer an opinion that a causal link is present. The reasonableness of a statute may not be questioned by a court, and a court may not substitute its own policy judgments for those of the legislature. *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000). Courts must presume that the legislature means in a statute what it says and says in a statute what it means. *Id.* at 307.

Moreover, Mr. Cooke's injury is not so "obvious, simple and routine" to enable this Court to infer a causal link. The websites of both the American Academy of Family Physicians[1] and the American Academy of Orthopedic Surgeons[2] identify multiple potential causes for a lisfranc injury, including a twisting fall, a fall from height, motor vehicle crashes and industrial accidents. The statute requires this Court to find causation based upon expert medical testimony. Mr. Cooke's description of his slip and fall, though credible, was minimal, and the Court cannot infer that it caused the fracture. His delay in seeking treatment and testimony of no immediate evidence of symptoms causes the Court concern. A physician must opine that a fall such as Mr. Cooke described could happen and result in symptoms materializing over time. Further, in

---

1 "Lisfranc joint fracture–dislocations and sprains can be caused by high-energy forces in motor vehicle crashes, industrial accidents and falls from high places. Occasionally, these injuries result from a less stressful mechanism, such as a twisting fall." LISFRANC INJURY OF THE FOOT: A COMMONLY MISSED DIAGNOSIS, http://www.aafp.org/afp/1998/0701/p118.html (last visited Feb, 25, 2015).

2 "[A Lisfranc injury] is a severe injury that may take many months to heal and may require surgery to treat. ... These injuries can happen with a simple twist and fall. This is a low-energy injury. It is commonly seen in football and soccer players. It is often seen when someone stumbles over the top of a foot flexed downwards. More severe injuries occur from direct trauma, such as a fall from a height. These high-energy injuries can result in multiple fractures and dislocations of the joints." LISFRANC (MIDFOOT) INJURY, http://orthoinfo.aaos.org/topic.cfm?topic=A00162 (last visited Feb. 24, 2015).

6

reviewing the hospital medical records, the overall impression is that Mr. Cooke sought medical treatment for chest pain and alcohol withdrawal, rather than the foot fracture.

The Court's order is interlocutory. Should Mr. Cooke obtain the requisite medical proof, this Court encourages the parties to revisit the issue directly. If they cannot reach an agreement, Mr. Cooke may file another request for an expedited hearing.

In sum, Mr. Cooke has the burden of establishing his injury arose primarily out of and in the course and scope of employment. Insufficient evidence exists in the record at this time to prove Mr. Cooke suffered an acute injury arising primarily out of and in the course and scope of his employment with the County on October 17, 2014. Therefore, Mr. Cooke's claim is denied.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Cooke's claim against the County for the requested medical benefits is denied at this time.

2. This matter is set for Initial Hearing on April 8, 2015, at 9:00 a.m., Central Time.

**ENTERED this the 25th day of February, 2015.**

_____
**Kenneth M. Switzer, Chief Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers Compensation. You must dial in at 615-532-9552 or 866-943-0025 toll free to participate in your scheduled conference.**

**Please Note:** **You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* after of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before Court Clerk shall submit the record to the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Benefits was sent to the following recipients by the following methods of service on this the 25th day of February, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Mailing Address/Email Address |
|---|---|---|---|---|---|---|
| Benjamin Cooke, Employee | X | | | | | 9363 Clovercroft Rd., Franklin, TN 37067 |
| Lisa Carson, Employer's attorney | | | | | X | LCarson@buergerlaw.com |

Penny Shrum, Clerk
Court of Workers' Compensation Claims

8