


# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **Brandon Sullins** | ) | **Docket No.: 2015-06-0581** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 53423-2015** |
| **Total HVAC** | ) | |
| **Employer,** | ) | **Judge Joshua Davis Baker** |
| **And** | ) | |
| **Builder's Premier** | ) | |
| **Insurance Carrier/TPA.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER DENYING TEMPORARY DISABILITY AND MEDICAL BENEFITS

---

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on October 14, 2015, upon the Request for Expedited Hearing filed by the employee, Brandon Sullins, pursuant to Tennessee Code Annotated section 50-6-239 (2014). The central legal issue is whether Mr. Hall sustained an injury that arose primarily out of and within the course and scope of employment. As explained below, the Court finds that Mr. Sullins failed to carry his burden of proof, and holds that he is not entitled to benefits at this time.[1]

### History of Claim

Brandon Sullins is a twenty-nine-year-old resident of Davidson County, Tennessee, who worked as a plumber for Total HVAC. On July 3, 2015, Mr. Sullins went to Taco Bell in Sparta, Tennessee to install a Power Soak sink as part of his job duties for Total HVAC.[2] Total HVAC observed the Fourth of July holiday on July 3 and, according to Mr. Sullins, he was the only plumber available for the company to take "call" that weekend.

Mr. Sullins arrived at the Taco Bell just before the store closed for the evening to

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

[2] A Power Soak sink is a three-compartment sink used in commercial settings to cleanse food and cooking utensils.

begin his work. An electrician employed by Total HVAC employee, Ali Heidari, helped Mr. Sullins remove the old sink and install the new one. (Ex. 5.) When Mr. Sullins removed the old sink, some of the water from the sink, about a cup full, dripped onto the tile floor. Mr. Sullins laid some plastic and cardboard on top of the water, and then lay on his back on top of the material and began hooking up the sink.

In his affidavit, Mr. Heidari wrote that he did not observe any chemicals on the ground in the work area or smell any chemicals. (Ex. 5.) He did not state whether he saw any water on the floor. *Id.*

Despite the cardboard and plastic on the floor, Mr. Sullins testified that some of the water got onto his clothes. About two hours after he began hooking up the sink, Mr. Sullins experienced a "tingling sensation." Mr. Sullins wrote in his affidavit that he told Mr. Heidari when he began to feel the tingling sensation. At the hearing, however, Mr. Sullins said that he "thought" he mentioned the sensation in his arms to Mr. Heidari but could have been mistaken. According to Mr. Heidari's affidavit, Mr. Sullins never complained of burning or irritation.

Around 5:00 or 6:00 a.m., after Mr. Heidari left, Mr. Sullins began experiencing a burning sensation and his arms began turning "a very streaky red." Mr. Sullins thought he got something on his arms but did not know what. He sprayed water on his arms in an attempt to wash the chemical off, but it only seemed to make it worse.

Mr. Sullins stated in his affidavit that he attempted to call the plumbing manager and several other Total HVAC employees when the burning sensation worsened. He called the emergency on-call operator after failing to reach his manager or other employees. The operator told Mr. Sullins that no one was available to relieve him. Mr. Sullins then went back to working on the sink.

Near the time Mr. Sullins finished installing the sink, Mark Garrett, a Taco Bell manager, arrived at work. Mr. Garrett wrote in an affidavit that he saw the irritation on Mr. Sullins' arms but was not sure what could have caused it, as the only cleaners his employees use are dish soap and sink sanitizer. (Ex. 7.) At the hearing, Mr. Sullins admitted he could not identify the chemical that was on the floor.

After leaving Taco Bell, Mr. Sullins stopped at a convenience store. A sales clerk at the convenience store, Cathy Loftes, provided an affidavit stating that she saw the burns on Mr. Sullins' arms and suggested he go the doctor or hospital. Ms. Loftes further wrote, "I told him it looked really bad to me." (Ex. 6.)

Mr. Sullins then drove home and tried to remove the substance from his arm in the shower. When his effort proved unsuccessful, Mr. Sullins and his mother, Lana Sullins, went to the emergency room at Summit Medical Center.

The Summit treatment notes state that Mr. Sullins reported suffering sunburn the previous week, the pain from which worsened when his arms came in contact with "high powered sink detergent." (Ex. 1 at 25.) The treatment notes also state that Ms. Sullins applied Silvadene to the affected area. *Id*. Ms. Sullins acknowledged putting Silvadene on one area of Mr. Sullins' arm, as well as Neosporin.

Summit providers diagnosed Mr. Sullins with bilateral arm burns and released him. *Id*. at 32. Mr. Sullins returned to Summit on July 4 and 5, when the burns on his arms worsened and he developed a fever. *Id*. at 1-24. On July 5, 2014, Summit transferred Mr. Sullins to Vanderbilt Medical Center for treatment in its burn center. *Id*. at 6.

At Vanderbilt, Mr. Sullins received a skin graft. The treatment notes from Vanderbilt state the following concerning his condition just after admission: "chemical burns to bilateral axillae and [bilateral upper extremities] with concern for cellulitis." (Ex. 2 at 25; Ex. 8.)

At the hearing, Mr. Sullins admitted he did not know what chemical caused his burns but maintained that the chemical came from Taco Bell. He also admitted having a sunburn two weeks prior to the date of injury, but testified that the sunburn had completely healed.

Following the incident at Taco Bell, Michael Devore interviewed Mr. Sullins.[3] Mr. Devore provided an affidavit detailing statements made by Mr. Sullins in the interview. In his affidavit, Mr. Devore claimed that Mr. Sullins "believes that he has Crohn's disease." At the hearing, Mr. Sullins testified that he underwent tests after his injury and learned from his doctor that he did not have Crohn's disease.

Total HVAC terminated Mr. Sullins a month or two after his surgery. Mr. Sullins testified that Total HVAC terminated him for violating company policy through misuse of a company vehicle.

Mr. Sullins filed a Petition for Benefit Determination seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediation Specialist filed a Dispute Certification Notice. The Court heard Mr. Sullins' Request for Expedited Hearing on October 14, 2015.

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in

---

[3] The parties did not provide any additional information about Mr. Devore.

favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[4] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

Under the Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

The statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance*, 164 S.W.3d 350, 354 (Tenn. 2005); *Hosford v. Red Rover Preschool,* No. 2014-05-0002, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at*19-20 (Tenn. Workers' Comp. App. Bd. Oct. 2, 2014). An injury occurs in the course of employment if it takes place while the employee performs a duty he or she is employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. 1993). Thus, the "course of employment" requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005).

"Arising out of employment" refers to causation. *Reeser v. Yellow Freight Sys.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the resulting injury and the conditions under which the work is required to be performed. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678

---

[4] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

(Tenn. 2005). Stated another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn. 1992). Except in "the most obvious, simple and routine cases," a workers' compensation claimant must establish by expert medical testimony that he or she is injured and that there exists a causal relationship between the injury and the claimant's employment activity. *Wheetley v. State*, No. M2013-01707-WC-R3-WC, 2014 Tenn. LEXIS 476, at *5 (Tenn. Workers' Comp. Panel June 25, 2014) (citing *Excel Polymers, LLC v. Broyles*, 302 S.W.3d 268, 274 (Tenn. 2009); *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008)).

Here, Mr. Sullins installed a sink at Taco Bell. During the installation, some liquid spilled on the floor. Mr. Sullins got the liquid on his clothes and began experiencing a tingling sensation on his skin that worsened to a burning sensation. He sought medical treatment, and the medical records indicate he suffered chemical burns.

Mr. Sullins testified that he neither saw nor smelled chemicals in the area around where he worked. Further, while he testified that Taco Bell workers mopped the floor before he installed the sink, he did not present any evidence showing the chemical used to mop the floor. He attempted to submit a material safety data sheet concerning the chemical used to mop the floor, but it was not admitted into evidence because he failed to lay a proper foundation. Without information concerning the type of chemical used on the floor, Mr. Sullins cannot carry his burden of proving causation because there is no proof linking the chemical burns to his workplace activities. Accordingly, Mr. Sullins has not come forward with sufficient information from which this Court can reasonably conclude he is likely to prevail at a hearing on the merits. The Court, therefore, must deny his request for temporary disability and medical benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Sullins' claim against Total HVAC and its workers' compensation carrier for temporary disability and medical benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on December 14, 2015, at 10:30 a.m. (CST).

**ENTERED this the 26th day of October, 2015.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

5

Initial Hearing:

A Scheduling Hearing has been set with **Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1.  Records of Summit Medical Center
2.  Records of Vanderbilt Medical Center
3.  Affidavit of Brandon Sullins
4.  Declaration of Michael Devore
5.  Declaration of Ali Heidari
6.  Affidavit of Cathy Loftes
7.  Affidavit of Mark Garrett
8.  Photographs

Technical Record:[5]
1.  Request for Expedited Hearing filed September 14, 2014
2.  Dispute Certification Notice filed September 2, 2015
3.  Petition for Benefit Determination filed August 4, 2015
4.  Attachments  to the affidavit of Brandon Sullins
5.  Total HVAC Pre-hearing brief filed October 2, 2015
6.  Notice of deposition of Brandon Sullins
7.  Notice of deposition of Brandon Sullins
8.  Mr. Sullins' witness list filed September 2, 2015
9.  Total HVAC response to Mr. Sullins' Request for Expedited Hearing
10. Total HVAC Memo In Response to Court's Pre-Hearing Order

---

[5] The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing.  The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 26th day of October, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Brandon Sullins | | | X | lanasullins@gmail.com |
| Devin Williams, Esq. | | | X | drw@psw-law.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**