FILED

March 7, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:32 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| LEE A. WALTON, SR.,<br>Employee, | ) | Docket No.: 2015-08-0306 |
| | ) | |
| v. | ) | State File Number: 60505-2015 |
| AVERITT EXPRESS,<br>Employer. | ) | |
| | ) | Judge Allen Phillips |
| | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on February 11, 2016, upon the Request for Expedited Hearing filed by the employee, Lee Walton, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Walton seeks medical and temporary disability benefits for an alleged back and neck injury. Averitt Express contends he has failed to establish a causal connection between his injury and his employment. Accordingly, the central legal issue is whether Mr. Walton's injury is causally related to his employment at Averitt. For the reasons set forth below, the Court finds Mr. Walton has not come forward with sufficient evidence at this time to show his injury arose primarily out of his employment and he is not entitled to the requested benefits.[1]

### History of Claim

Mr. Walton is a fifty-one-year-old resident of Shelby County, Tennessee who worked for Averitt as a truck driver. He alleges an injury to his back and neck on January 15, 2015, when unloading a trailer in Louisiana. Mr. Walton was moving what he described as an 800-pound "rolltainer."[2] When the "brakes" on the trailer lift gate failed, Mr. Walton was "pulled" by the rolltainer towards the rear of the trailer. When he jumped out of the way, Mr. Walton claims to have injured his back and neck. He described these injuries as causing "more severe pain" than he had experienced from a prior injury at

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

[2] A rolltainer, by Mr. Walton's description, is a rolling pallet of dry goods.

Averitt in September 2014.

When he finished unloading the trailer, Mr. Walton began his return trip to Averitt's terminal in Greenville, Mississippi. En route, he reported the injury to his dispatcher and advised he was unable to continue. Mr. Walton claims the dispatcher refused to send any transportation for Mr. Walton back to Memphis but advised he would send a relief driver for the truck. The dispatcher advised Mr. Walton to stay with the vehicle until relieved.

Mr. Walton then spoke with an insurance adjuster for Averitt who, according to Mr. Walton, took the position that his "injury" was a continuation of symptoms related to the prior injury of September 2014. Because Dr. Stephen Waggoner, an orthopedic surgeon, was the approved physician for that claim, the adjuster advised she would schedule an appointment with him. The adjuster advised the appointment was for evaluation of his back even though Mr. Walton advised her that his neck was now the primary problem.

On the evening of January 15, 2015, Mr. Walton sought care on his own at Delta Regional Medical Center in Greenville. There, he reported back and neck pain "radiating to both arms." (Ex. 2 at 17.) The provider noted a "chronic" onset and the "type" of injury as "lifting . . . at work." *Id.* A CT scan of the neck revealed "no significant acute abnormality" and a CT of the lumbar spine revealed a "small" disc herniation and mild stenosis. *Id.* at 19 and 20. The discharge diagnosis was neck and back pain. *Id.* at 21. Though the records do not reflect it, Mr. Walton testified the provider excused him from work for five days.

Upon his return to Memphis, Mr. Walton sought care on his own at Baptist Hospital on January 31, 2015. He complained of "left neck pain onset Sept 2014." Specifically, he was "reversing his truck and had an accident" where he "jerked" his neck. (Ex. 3 at 23.) He claimed to have "returned to work 9 days ago and the pain has worsened." *Id.* His neck pain radiated to the left arm. He also complained of low back pain. *Id.* The provider, Dr. Christopher Adelman, recommended MRIs of the cervical and lumbar spine. These showed "mild" abnormalities. The provider released Mr. Walton with diagnoses of a bulging lumbar disc and cervical stenosis. He advised Mr. Walton to follow with the "Workmans [sic] Comp" physician he was seeing. (Ex. 3 at 25.)

Mr. Walton saw Dr. Waggoner on February 4, 2015. Dr. Waggoner noted Mr. Walton was there, "for evaluation of his lower back." He recorded a detailed history that Mr. Walton injured his back on "8/22/2014" when he "backed his truck up and ran into a dock." The impact "jarred his neck and back." Dr. Waggoner noted that he, "was treating him for his neck and released him from his neck standpoint on 12/22/2014." After returning to work in January 2015, Mr. Walton stated the "pain got worse" and he had to go to the emergency room in Greenville, Mississippi where CT scans of the neck and

back were "within normal limits." (Ex. 4 at 1.)

Dr. Waggoner's examination was limited to the lumbar spine. He recorded no positive findings. He interpreted the lumbar MRI from Baptist on January 31, 2015, as showing no disc herniations and the cervical MRI as showing multilevel degenerative disc disease with no cord impingement or nerve root compression. (Ex. 4 at 2.) The diagnosis was "chronic low back pain." *Id.* Dr. Waggoner found no indication for surgical intervention and released Mr. Walton to regular duty. *Id.* at 3. Dr. Waggoner mentioned Mr. Walton desired a second opinion; Mr. Walton testified Averitt denied his request. Mr. Walton testified Dr. Waggoner only "looked at my back and not my neck," despite his complaints of neck pain.

Mr. Walton then sought care on his own from Dr. Madiha Mar at Baptist Primary Care. On February 11, 2015, he complained of lower back pain for "5 months." He stated the injury "happen [sic] at work" and there was "no fall." (Ex. 3 at 8.) A health questionnaire completed by Mr. Walton indicated he was there for "neck and back pains." *Id.* at 13. Dr. Mar diagnosed lumbago and took him off work for two weeks. *Id.* at 10. The next note from Dr. Mar is dated March 4, 2015, where Dr. Mar stated Mr. Walton was "unable to see the neurosurgeon this week" and that he will be calling to reschedule. He was to remain off work. *Id.* at 21.

Mr. Walton testified he waited for an appointment at "Campbell Clinic" but ultimately learned his insurance did not cover that provider. He then came under the care of Dr. Laverne Lovell, a neurosurgeon at Semmes-Murphey Clinic who performed a three-level cervical fusion. No records of Dr. Lovell were placed in evidence apart from off-work slips of April 21, 2015, and August 12, 2015. (Ex. 5 at 29 and 43.) At the time of the hearing, Mr. Walton remained off work per Dr. Lovell. However, since Averitt terminated him in September 2015, he no longer had insurance coverage and could not seek further treatment. He testified that he and Dr. Lovell had discussed the possibility of further surgery. At the hearing, he was wearing a "hard" cervical collar and what he described as a "bone growth stimulator."

Averitt terminated Mr. Walton on September 16, 2015, because, "my time had run out," apparently referring to a "leave of absence." He has not worked since January 15, 2015, and requests his "lost wages" from that time forward. He additionally requests reimbursement of certain medical bills for charges not covered under his Averitt group insurance. Mr. Walton expressed a desire to recover from his injuries and return to work. He expressed trepidation over his inability to support himself and his family.

For its part, Averitt argued that Mr. Walton failed to establish a compensable injury occurring on January 15, 2015. Specifically, it points to the records of Drs. Adelman and Waggoner. Both physicians attribute Mr. Walton's "back pain . . . to his previous injury" in September 2014. Because his back condition pre-existed January 15,

3

2015, the event of that date was a non-compensable aggravation of pain alone. Averitt elicited testimony from Mr. Walton on cross-examination to the effect that he had "experienced" back pain between September 2014 and January 15, 2015.

Averitt also argued that Mr. Walton had requested only benefits for a back injury. Mr. Walton disagreed that the request for benefits in this case was *only* for his back; instead, he claimed both his back and neck were injured. Regarding his neck, he admits Dr. Waggoner had released him regarding the September 2014 neck injury before the January 15, 2015 event. However, he contends the January event caused his need for medical treatment.

### Findings of Fact and Conclusions of Law

Because this case is in a posture of an Expedited Hearing, Mr. Walton need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015). In analyzing whether he has met his burden, the Court will not remedially or liberally construe the law in his favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Walton nor Averitt. *See* Tenn. Code Ann. § 50-6-116 (2015). Though Mr. Walton has elected to represent himself, as is his right, he still "must comply with the same standards to which parties with legal counsel must adhere." *Thurmond v. Yates Services*, No. 2015-06-0240, 2015 TN Wrk. Comp. App. Bd. LEXIS 34, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 8, 2015).

To be compensable, Mr. Walton must show that his alleged injury arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14) (2015). He must also show his injury was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, he must show, "to a reasonable degree of medical certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(D) (2015).

Weighed against these requirements, the Court will first address the lay proof that consisted solely of Mr. Walton's testimony. When doing so, the Court finds Mr. Walton credible. He testified concisely and without hesitation regarding the events of January 15, 2015. Based upon Mr. Walton's uncontroverted testimony, the Court finds he did prove

4

by a preponderance of the evidence a specific event identifiable by time and place of occurrence. Specifically, while unloading a truck in the course and scope of his employment with Averitt, he suffered pain in his neck and back when he jumped from a trailer.

However, upon careful review of the medical records, the Court finds no expert opinion that Mr. Walton's alleged neck injury is more likely than not related to the event of January 15, 2015.[3] The absence of an expert medical opinion that the specific incident contributed more than fifty percent in causing his neck injury is fatal to his claim at this Expedited Hearing. In so finding, the Court notes the records of Delta Regional record a "chronic" history of neck and back pain and reference a "lifting" event. There is no mention of the immediate event and no causation opinion. Dr. Dar records a history of only low back pain. Dr. Adelman notes complaints of neck pain but provides no causation opinion. Finally, Dr. Waggoner attributes no causation to the January 15, 2015 event and reiterates that he had released Mr. Walton from treatment for the neck. There are no medical records in evidence from Dr. Lovell, the operating surgeon.

The Court has considered Mr. Walton's position that Dr. Waggoner only examined his back despite his neck complaints both to the doctor and to the adjuster. However, Dr. Waggoner did specifically state in his note of February 4, 2015, that he reviewed the cervical MRI and it showed no cord impingement or nerve root compression. Thus, the evidence establishes Dr. Waggoner did consider objective testing of the neck, and nothing in that testing changed his opinion regarding his release of Mr. Walton in December 2014 for the earlier neck injury of September 2014.

Our Appeals Board recently stated, "[w]ith respect to the element of medical causation, it was traditionally the employee's burden to offer expert medical proof of causation '[e]xcept in the most obvious, simple and routine cases.'" *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015) *citing Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008). Mr. Walton's injury is not so obvious as to remove the need for expert proof of causation. Further, in *Scott*, our Appeals Board noted that:

> [F]or injuries before July 1, 2014, an injured employee could satisfy her burden of proof of medical causation by offering expert medical testimony that a work accident 'could be' the cause of the employee's medical condition, when there was corroborating lay testimony from which it could reasonably be inferred that the incident was in fact the cause of the injury. *See, e.g., Hill v. Eagle Bend Mfg.*, 942 S.W.2d 483 (Tenn. 1997). The analysis in such cases was predicated on expert medical testimony

---

[3] The Court notes Mr. Walton somewhat meticulously arranged various stacks of documents on the counsel table for presentation. He obviously spent considerable time in preparing his case. He submitted medical records from all his providers with the exception of Dr. Lovell, his treating surgeon.

5

combined with corroborative lay testimony. Thus, even under pre-reform law, *lay testimony alone was insufficient in most cases to establish adequate evidence of medical causation.*

*Scott*, at *11(emphasis added).

Accordingly, Mr. Walton cannot rely solely upon his own testimony because it is he who must establish causation and his "lay testimony . . . without corroborative expert testimony, [does] not constitute adequate evidence of medical causation." *Scott*, at *12. He must "secure expert opinions or other evidence necessary to address any applicable burden of proof." *Pool v. Jarmon D&Q Transport*, No. 2015-06-0510, 2016 TN Wrk. Comp. App. Bd. LEXIS 1 at* 10 (Tenn. Workers' Comp. App. Bd. Jan. 4, 2016).

Based upon the evidence, the Court finds Mr. Walton has not come forward at this time with sufficient evidence to show he would likely prevail at a hearing on the merits and denies his request for benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Walton's claim against Averitt for the requested medical benefits is denied at this time.

2. This matter is set for an Initial (Status) Hearing on April 27, 2016, at 9:00 a.m. Central time.

**ENTERED this the 7th day of March, 2016.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Initial (Status) Hearing:

An Initial (Status) Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if

any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Lee A. Walton, Sr.;
2. Medical Records of Delta Regional Medical Center;
3. Medical Records of Baptist One Care and Baptist Hospital;
4. Medical Records of Dr. Stephen Waggoner;
5. Medical Records of Semmes-Murphey Clinic;
6. Medical Records of Methodist-LeBonheur Healthcare;
7. Off-work slip from Delta Regional Medical Center;
8. Proof of Delivery form from Dollar General Store of January 15, 2015;
9. Averitt Request for Leave of Absence Form completed by Mr. Walton;
10. First Report of Work Injury;
11. Mileage Reimbursement Request completed by Mr. Walton;
12. Medical bills from various providers introduced by Mr. Walton[4].

Technical record:
1. Petition for Benefit Determination, filed on August 5, 2015;
2. Dispute Certification Notice, filed on August 27, 2015;
3. Request for Expedited Hearing, filed on November 12, 2015; and
4. Averitt's Response to Expedited Hearing.[5]

---

[4] Given the findings herein, the Court need not itemize the providers from whom there are outstanding bills.

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 7th day of March, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Lee A. Walton, Self-represented | X | | X | leewltn@gmail.com |
| Gregory C. Morton, Employer's Counsel | | | X | greg@sparkman-zummach.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

10