**FILED**
**May 01, 2018**
**09:26 AM(ET)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



## TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **Billie Sanders,** | ) | **Docket No.: 2017-01-0710** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Robinson Manufacturing Co., Inc.,** | ) | **State File No.: 58982-2016** |
| **Employer,** | ) | |
| **And** | ) | |
| **United Wisconsin Insurance Company,** | ) | **Judge Thomas Wyatt** |
| **Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

This matter came before the Court for an Expedited Hearing on April 26, 2018, wherein Billie Sanders sought medical benefits, including a request for a change of treating orthopedists. Robinson Manufacturing Co. (Robinson) contended that the statute of limitations barred Ms. Sanders's claim and alternatively that Ms. Sanders must return to her panel-selected physician, Dr. John Chrostowski, for treatment of her injury. For the reasons below, the Court holds the statute of limitations does not bar Ms. Sanders's claim, but she must return to Dr. Chrostowski for further treatment of her injury.

### History of Claim

Ms. Sanders's right shoulder "popped" while lifting a 35-to-40 pound box at Robinson on July 29, 2016. She experienced immediate shoulder pain and numbness, as well as tingling in her right arm. Robinson provided her a panel from which she selected Physician's Care, a walk-in clinic, for authorized care. The nurse practitioner at Physician's Care diagnosed Ms. Sanders with a shoulder strain and released her to return to work under restrictions. Ms. Sanders obtained a full work-release four days later during a follow-up visit. On October 10, 2016, the carrier issued checks to pay for Ms. Sanders's treatment at Physician's Care, according to the carrier's payment records.

1

Ms. Sanders returned to her regular job at Robinson and continued to experience symptoms. She claimed that she reported her pain to her supervisor on several occasions, but Robinson did not file new First Reports of Injury or send her for treatment.[1]

Ms. Sanders testified that she reported her shoulder pain to her supervisor on August 15, 2017, when she could no longer handle the pain.[2] Ms. Sanders's supervisor documented her recurrence of pain from the July 2016 injury but did not note that Ms. Sanders reported a new injury. However, Robinson prepared a new First Report of Injury and offered Ms. Sanders a panel from which she again selected Physician's Care.

The records at Physician's Care noted Ms. Sanders's history that the symptoms from her previous injury went away until recurring approximately three months before the visit. The records also indicated that Ms. Sanders stated she did not suffer a new work injury prior to the current visit. After examining Ms. Sanders, the nurse at Physician's Care again diagnosed a strain, placed work restrictions, and recommended orthopedic treatment.

Ms. Sanders selected Dr. John Chrostowski from a panel of orthopedists offered by Robinson. She completed and signed an in-take form before her initial visit with him in which she described injuring her shoulder lifting a box in July 2016. Ms. Sanders also wrote on the form that, following her previous injury, "the pain would come and go, then two months ago it came and never left." She added that, "[a]s long as I don't move it (work it) it don't hurt that bad." Ms. Sanders did not describe a new injury on August 15, 2017.

Dr. Chrostowski took an x-ray of Ms. Sanders's shoulder and, following his clinical examination, identified findings suggestive of cervical radiculopathy or shoulder impingement. He ordered physical therapy. Ms. Sanders's therapist noted that she made gains during therapy but with increased pain.

Ms. Sanders complained about Dr. Chrostowski's treatment recommendations at her next visit with him. Dr. Chrostowski noted the following documentation of his conversation with Ms. Sanders:

> Patient frustrated because she feels shoulder isn't getting better. Stated they would like to see another physician because she feels she isn't getting treatment adequately. [I] [s]tated it's standard protocol to try

---

[1] Ms. Sanders stated in her affidavit that she did not seek additional care for her shoulder because she was concerned she might lose her job.

[2] Ms. Sanders stated in her affidavit that she injured her shoulder on August 15, 2017, when she reached for a garment.

2

physical therapy and then if that doesn't improve patient's symptoms, order MRI. Patient wants to see another physician and [I] informed her she will need to contact workers' compensation and pick another physician from their panel.

Ms. Sanders and her husband both testified about Ms. Sanders's dissatisfaction with Dr. Chrostowski's treatment. Ms. Sanders stated the physical therapy made her pain worse, which in turn made it difficult for her to perform the duties Robinson assigned her. She testified Dr. Chrostowski "acted like she was not even there" during the second visit. Mr. Sanders testified that Dr. Chrostowski was "unprofessional" because he did not know what his wife was "there for," stating he "had slept" since the initial visit.

Robinson's carrier issued several payments for Ms. Sanders's treatment after August 15, 2017. The carrier issued mileage checks to Ms. Sanders on September 17 and October 5. On September 20, it paid for Ms. Sanders's treatment at Physician's Care and issued a check for Dr. Chrostowski's care. The carrier assigned these payments to a new claim it established after Ms. Sanders's report to her supervisor on August 15, 2017.

Ms. Sanders never actually asked Robinson to replace Dr. Chrostowski. However, on January 2, 2018, she consulted orthopedist Dr. Todd Bell about her shoulder. Dr. Bell noted a history of the July 2016 injury but not an August 2017 injury. Dr. Bell injected Ms. Sanders's shoulder with cortisone, released her to return to work without restrictions, and recommended cervical and right-shoulder MRIs to assist him in deciding a course of treatment. Ms. Sanders submitted an affidavit signed by Dr. Bell stating his opinion that Ms. Sanders's "lifting a box . . . on July 28, 2016 . . . and reaching on August 15, 2017[3]," primarily caused her right-shoulder and cervical conditions.

Ms. Sanders filed a Petition for Benefit Determination (PBD) on October 13, 2017, on the July 2016 injury.[4] Robinson claimed that the statute of limitations barred Ms. Sanders's claim because she did not file a PBD within one year of October 10, 2016, the date of the last medical payment issued under her July 2016 claim. In support of this position, Robinson argued that Ms. Sanders's report of shoulder pain in August 2017 constituted a new injury; and thus, payments issued for that injury did not extend the statute of limitations on the July 2016 claim.

Ms. Sanders countered Robinson's statute of limitations defense by asserting that her pain from the July 2016 injury never went away and the pain she reported August 15,

---

[3] The parties presented no evidence explaining how Dr. Bell received information regarding the 2017 reaching incident.

[4] Robinson stated that Ms. Sanders also filed a PBD on the August 2017 injury. The parties submitted no evidence regarding the alleged filing.

2017, did not constitute a new injury. She argued that the payments Robinson issued in September and early October 2017 extended the statute of limitations on the July 2016 injury because Robinson issued the payments within one year from its October 10, 2016 payment. Ms. Sanders contended the filing of her PBD on October 13 is timely because it occurred within a year of the payments that Robinson issued in September and October 2017. She argued that Robinson cannot absolve itself from liability on the July 2016 claim by unilaterally creating a new claim following the August 2017 report of pain.

On the change-of-physician issue, Ms. Sanders contended she has the right to seek a new treating physician because Dr. Chrostowski refused to treat her after she challenged his treatment protocol. Robinson countered that if her claim survives the statute of limitations defense, Ms. Sanders must return to Dr. Chrostowski for future care of her shoulder injury, as he is the authorized treating physician.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

Under Tennessee law, Ms. Sanders bears the burden of proof on all elements of her workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2017); *see also Buchanan v. Carlex Glass Co.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Sept. 29, 2015). However, Robinson has the burden of showing that the statute of limitations bars Ms. Sanders's claims. *Cloyd v. Hartco Flooring Co.,* 274 S.W.3d 638, 647 (Tenn. 2008).

A party is not required to establish a claim or defense by a preponderance of the evidence at an Expedited Hearing. *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Rather, the party with the burden of proof must present sufficient evidence the party is likely to prevail at a hearing on the merits. *Id.*; *see also* Tenn. Code Ann. § 50-6-239(d)(1) (2017).

### *Statute of Limitations*

Tennessee Code Annotated sections 50-6-203(b)(2) and (c) (2017) address Robinson's statute of limitations defense. The section describes the requisite limitation period as follows:

> (b)(2) In instances when the employer has voluntarily paid workers' compensation benefits, within one (1) year following the accident resulting in injury, the right to compensation is forever barred, unless a petition for benefit determination is filed with the bureau on a form prescribed by the administrator within one (1) year from the latter of the

4

date of the last authorized treatment or the time the employer ceased to make payments of compensation to or on behalf of the employee.

(c) For purposes of this section, the issuing date of the last payment of compensation by the employer, not the date of its receipt, shall constitute the time the employer ceased making payments[.]

In addressing the statute of limitations defense, the Court first decides whether the August 2017 injury is a new injury. The Court holds that Robinson will not likely prevail in showing that Ms. Sanders sustained a new work injury in August 2017. The Court notes that Ms. Sanders did not inform medical providers she saw in and after August 2017 that she sustained a new injury. Further, the Court finds credible Ms. Sanders's testimony that she routinely endured shoulder pain following the July 2016 injury. In summary, the Court holds that the evidence established that, at a hearing on the merits, the Court would likely find that the shoulder pain Ms. Sanders experienced in August 2017 had its genesis in the injury she sustained in July 2016, and no new injury occurred in August 2017.

The Court now considers whether Robinson will likely prevail at trial in showing the one-year statute of limitations bars Ms. Sanders's July 2016 claim. The evidence established that Robinson's carrier issued a check on October 10, 2016, to pay for Ms. Sanders's treatment for the July 2016 injury. The evidence also showed that Robinson issued mileage checks to Ms. Sanders on September 7 and October 10, 2017, for mileage for medical visits and issued checks to Physician's Care and Dr. Chrostowski on September 20.

Since the Court concluded that the August 2017 event was not a new injury, all the medical benefits payments that Robinson made for treatment of Ms. Sanders's shoulder injury applied to the July 2016 injury date. Thus, a one-year gap in payments never occurred following the October 10, 2016 payments. As such, Robinson will not likely prevail in showing that Ms. Sanders untimely filed her PBD.

*Change of Physicians*

The Court considers Ms. Sanders's request to change physicians within the framework laid out in *Baker v. Electrolux,* 2017 TN Wrk. Comp. App. Bd. LEXIS 65, at *7-8 (Oct. 20, 2017). In *Baker,* the Appeals Board recognized the employer's statutory duty to "provide injured workers 'such medical and surgical treatment . . . as ordered by the attending physician . . . made reasonably necessary by [the employee's injury].'" *See* Tenn. Code Ann. § 50-6-204(a)(1)(A). The Board coupled the employer's obligation with the requirement that the employee "accept the medical benefits afforded under this section" provided that the employer offered the employee an appropriate panel. *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(i). However, the Board in *Baker* did recognize that an

5

employer would have an obligation to provide an employee with a new authorized treating physician "when the physician selected from a panel refuse[s] to see the employee[.]"

Based on the above authority, the Court holds that Ms. Sanders must return to Dr. Chrostowski for future treatment of her injury. Ms. Sanders's disagreement with Dr. Chrostowski's treatment protocol and the doctor's instruction that she obtain the employer's authorization for treatment by another orthopedist do not rise to the level of a refusal by Dr. Chrostowski to treat Ms. Sanders. Thus, the Court holds that, at a hearing on the merits, Ms. Sanders will likely not prevail in her quest for treatment by a physician other than Dr. Chrostowski.

**IT IS, THEREFORE, ORDERED** as follows:

1. The statute of limitations does not bar Ms. Sanders's claim.

2. Dr. Chrostowski remains the authorized treating physician for future treatment of Ms. Sanders's accepted shoulder injury. Ms. Sanders shall contact Robinson for pre-approval to see Dr. Chrostowski again.

3. This matter is set for a Status Hearing at **10 a.m. Eastern Time on July 2, 2018**. You must call (423) 634-0164 or toll-free at (855) 383-0001 to participate in the Status Hearing. You must call on the scheduled date/time to participate. Failure to call may result in a determination of the issues without your further participation.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED May 1, 2018.**

_____

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

**APPENDIX**

<u>Exhibits</u>: The Court admitted the following exhibits into evidence during the Expedited Hearing:

1. First Report of Injury;
2. Affidavit of Billie Sanders;
3. Records of Dr. Todd Bell;
4. Records of Dr. John Chrostowski;
5. Records of Physician's Care;
6. Payment records of Robinson's carrier;
7. Affidavit of Dr. Todd Bell;
8. Declaration of Hope Garlich, plus attached exhibits; and
9. Additional Physician's Care record.

<u>Technical record</u>: The Court considered the following documents filed with the Clerk in deciding this claim[5]:

1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing;
4. Notice of Expedited Hearing;
5. Employee's Brief Supporting Petition for Benefit Determination;
6. Employee's Notice of Filing of the Affidavit of Dr. Todd Bell;
7. Employer Pre-Hearing Brief; and
8. Employer Witness and Exhibit List.

---

[5] The Court did not review documents attached to filings unless it admitted the attached documents into evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on May 1, 2018.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| R. Lew Belvin, Tim Henshaw, Employee Attorneys | | X | Lew.belvin@mcmahanlawfirm.com tim@mcmahanlawfirm.com |
| Cole Stinson, Employer Attorney | | X | Cole.stinson@accidentfund.com Amy.jacobs@accidentfund.com |

*Penny Shrum*  w/permission

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

8



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *five business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within five business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Tennessee Bureau of Workers' Compensation**
220 French Landing Drive, I-B
Nashville, TN 37243-1002
800-332-2667

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____       2. Address: _____

3. Telephone Number: _____       4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental $ _____ per month

Groceries     $ _____ per month     Telephone     $ _____ per month

Electricity     $ _____ per month     School Supplies $ _____ per month

Water     $ _____ per month     Clothing     $ _____ per month

Gas     $ _____ per month     Child Care     $ _____ per month

Transportation $ _____ per month     Child Support     $ _____ per month

Car     $ _____ per month

Other     $ _____ per month (describe: _____ )

10. Assets:

Automobile     $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House     $ _____     (FMV) _____

Other     $ _____     Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)            RDA 11082